DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.

---

## Milk Producers Marketing Company, Appellee, v. Arth'ur L. Bell, Appellant.

### Gen. No. 7,277.

1. CORPORATIONS—*powers of co-operative milk producers' corporation includes handling and selling milk.* The charter of a corporation defining its powers to be to promote, foster and encourage the business of producing, handling and marketing milk and milk products co-operatively, to minimize speculation and waste, to stabilize the market, to handle the problems arising co-operatively, to do each and everything necessary for the accomplishment of the purpose and to make contracts accordingly, authorizes the actual handling and sale of milk and cream.

2. CORPORATIONS—*co-operative milk producers' association is corporation not for profit.* A corporation organized for and engaged in the co-operative handling of the milk and cream of its members which distributed all of the proceeds of sale among its members after deducting expenses was not doing business for pecuniary profit and was legally organized under the statute providing for corporations not for pecuniary profit.

3. INJUNCTIONS—*against breach of exclusive co-operative marketing contract.* Under a contract between a milk producers' co-operative selling association providing that the members should dispose of their milk only through such association and that the as-

(222)

sociation should have the right to stipulated damages if a member sold milk to others and the right to enjoin such sale, the association was entitled to an injunction restraining a member from selling his milk products to other persons, on the theory that it had no adequate remedy at law.

4. CONTRACTS—*estoppel of party to deny validity of attorney's fee clause in injunction suits.* In a suit by a co-operative milk producers' selling association to enjoin a member from selling milk to others in violation of his contract, defendant will not be heard to say that a provision in the contract for the allowance of a solicitor's fee was illegal.

5. CORPORATIONS—*estoppel to plead ultra vires.* If a contract between a corporation and another has been executed by one of the parties, the defense of ultra vires is not available to the other party.

6. CORPORATIONS—*execution of contract of many parties barring defense of ultra vires.* Where contracts between an incorporated milk producers' association and its 7,000 members by their terms were to be read together, making one agreement, and the handling of the milk of one member is but a trifle compared with that handled under all of the contracts, the contract with a particular member is practically executed on the part of the corporation and a member cannot set up the defense to a suit to enjoin him from violating the contract that the contract is ultra vires.

7. CONTRACTS—*between corporation and many members not unilateral.* A contract between a co-operative milk producers' association and one of its members which provides that all of the contracts are to be read together, making one agreement, is not unilateral.

8. CONTRACTS—*consideration for mutual milk producers' marketing agreement.* A contract between a milk producers' co-operative association and a member specifically binding both parties for a period of two years, the member to sell his milk and cream to the association and the association to market it to the best advantage possible, in pursuance of which the association has made preparations to market the product of its members, is based upon a mutual consideration.

9. CONTRACTS—*seal imports consideration.* A contract under seal imports a consideration.

Appeal by defendant from the Circuit Court of McHenry county; the Hon. EDWARD D. SHURTLEFF, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed July 24, 1924.

V. S. LUMLEY, EDWARD MAHER, BERNHARDT FRANK and LOY N. MCINTOSH, for appellent.

AARON SAPIRO, LAWRENCE L. LEVY and WALTER F. LYNCH, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Milk Producers Marketing Company, a corporation, filed this bill in the circuit court of McHenry county against appellant, Arthur L. Bell, in which it sought to restrain appellant by injunction from selling milk to persons other than to appellee in violation of a contract between appellant and appellee, and for an accounting of milk previously sold. Appellant filed a demurrer to the bill, the demurrer was overruled, appellant elected to stand by his demurrer, a decree was entered substantially in accordance with the prayer of the bill and an appeal has been prosecuted to this court.

As all of the errors urged appear upon the face of the bill it will be necessary to set out its substantial allegations. It alleged that the complainant was a nonprofit corporation, without capital stock, duly organized under the laws of Illinois, on November 16, 1922, by producers of milk and cream, to promote, foster and encourage the production, handling and marketing of milk and milk products, to minimize speculation and waste therein, to handling co-operatively and collectively products of milk producers, without any pecuniary profit to complainant as will more fully appear from the charter attached to the bill and marked Exhibit "A." In order to accomplish this purpose a large number of producers of milk and cream became members of the corporation and each entered into an agreement in writing with complainant and with each other which agreements were substantially the same. The bill further alleged

that on December 13, 1922, defendant and complainant entered into an agreement, in writing, a copy of which was attached to the bill and marked Exhibit ''B.'' By this agreement defendant agreed to deliver to complainant all the milk and cream produced by his cows from December 13, 1922, to March 1, 1924, and thereafter, continuously, unless the contract was canceled by a written notice from complainant. Defendant constituted complainant his sole agent to handle, manufacture or market such milk and cream together with milk and cream of other producers signing similar contracts. Complainant agreed to market the milk and cream in such a way as it should deem best for the mutual benefit of the contracting parties. All of the agreements signed by all of the producers were to be deemed one single contract between the complainant and the producers, and in any legal proceedings arising out of the agreements complainant was to act in its own name for all of the producers. On January 1, 1923, complainant notified defendant to deliver his milk and cream to a plant of complainant at Richmond, McHenry county, Illinois. Defendant failed and refused to make such delivery. It is alleged that defendant's cows produced 47,700 pounds of milk and cream from January 1, 1923, to April 17, 1923, which defendant sold to parties other than complainant; that unless defendant is restrained by injunction he will continue to sell all of his milk and cream to persons other than complainant. It is alleged that complainant has performed all the terms of the agreement on its part to be performed, and has made similar agreements to Exhibit ''B'' with about 7,065 other producers of milk and cream, and is able, ready and willing to receive, handle, manufacture and market the milk and cream of defendant and other members of the corporation.

The bill then sets out the manner in which the milk is handled, graded and sold by the complainant, to-

gether with the method of distributing the purchase price among the various producers according to the amount of milk and cream which each one has furnished under his contract. This allegation shows that the complainant does not charge anything for its services in marketing these products, and that after the expenses are deducted the net proceeds go to the members of the corporation producing or furnishing the milk.

The bill further alleged that on November 20, 1922, the board of directors of complainant adopted certain by-laws which are now in force and effect, a copy of which is attached to the bill; that its articles of incorporation prohibited complainant from handling milk of any person other than its members; that the complainant has made contracts, established receiving stations and plants, borrowed money, hired employees and expended large sums, all with the expectation of receiving the delivery of milk and cream from its members. The contract between complainant and its members provides that inasmuch as the remedy at law for a breach of the contract would be inadequate and would be extremely difficult to determine, the damages in case of a breach thereof should be 25 cents per hundred pounds for all milk and cream not delivered, as and for liquidated damages, and all parties agreed that the contract was one of a series, dependent for its true value upon the adherence of each and all of the producers to each and all of the said contracts. It was then alleged that 25 cents per hundred pounds was a reasonable amount for the damages suffered by complainant on account of the defendant's failure to deliver, and that by reason thereof complainant has been damaged in the sum of $119.25. The contract between the parties further provided that the producer, in the event of a breach of the contract, agreed that the corporation should be entitled to an injunction to prevent a further breach

thereof, and to such other relief in equity as the law might permit.

The bill further alleged that the failure to deliver milk and cream in accordance with the terms of the agreement will defeat and destroy the purpose for which complainant was organized for the reason that it was necessary for complainant to control a large quantity of milk and cream which it would not be able to do if its members violated their agreements; that complainant is not permitted to purchase milk products in the open market, and without such control or right complainant cannot attain any of the objects for which it was organized, and will be damaged in an amount which cannot be ascertained in that the cost of marketing the milk of its members who deliver will be raised to a degree which cannot be estimated. This increased cost will cause dissatisfaction of the members, will encourage other members not to deliver, and will prevent the normal increase in the number of members, which increase would result in strengthening the pro rata overhead costs to its members. The agreement between complainant and defendant provided that defendant should pay any reasonable attorney's fee incurred in any action brought by reason of a threatened breach of the agreement, and the bill alleged that complainant has incurred for the prosecution of this action an attorney's fee of $500, which is reasonable, and which complainant asks be allowed.

The bill further alleged that by reason of the foregoing facts, complainant has suffered irreparable injury and damage in an amount which cannot be ascertained, has no adequate remedy at law, and will be without a remedy unless an injunction is issued. It prays for an accounting, for the payment of solicitor's fees, for an injunction restraining defendant from violating the contract by prohibiting him from selling to any persons other than complainant. The decree is

substantially in accordance with the prayer of the bill.

The first ground of reversal urged is that the charter of appellee creates merely an educational bureau and does not create a corporation to engage in the active marketing and manufacture of milk and cream for the profit of its members. The charter is set out in the bill and defines appellant's powers as follows: "To promote, foster and encourage the business of producing, handling and marketing milk and milk products co-operatively; to minimize speculation and waste in the production, distribution and marketing of milk and milk products; to stabilize milk markets; to handle co-operatively and collectively the problems of milk producers, without pecuniary profit from the corporation to the members thereof, and to do each and everything necessary, suitable or proper for the accomplishment of any of the purposes or attainment of any one or more of the objects herein enumerated, or which shall at any time appear conducive to or expedient for the interests or benefit of this company and the members thereof, and to contract accordingly." We do not think the language of this charter can be limited in the manner claimed by appellant. It certainly cannot be successfully contended that all appellee had authority to do under the language of the charter was to advise or hold a school of instruction relative to what should be done in order to best market milk and cream, in other words, to create an educational trade bureau. The objects, as stated in the charter, are to promote, foster and encourage the business, to minimize speculation and waste, to stabilize the market, to handle co-operatively the problems arising, to do each and everything necessary for the accomplishment of the purpose, and to make contracts accordingly. This language authorizes action and is not confined to mere talk. It authorizes exactly what was done in this case, namely, the actual han-

dling and sale of milk and cream. We think this view is sustained by the language of the corporation statute passed in 1923. (Cahill Ill. St. 1923, ch. 32, ¶ 455[1] *et seq.*) The first section in defining the policy of the acts provides: "In order to promote, foster and encourage the intelligent and orderly marketing of agricultural products through co-operation; and to eliminate speculation and waste; and to make the distribution of agricultural products between producer and consumer as direct as can be efficiently done; and to stabilize the marketing of agricultural products; and to provide for the organization and incorporation of co-operative marketing associations for the marketing of such products, this act is passed." Then follows provisions for the doing of exactly what was done in the case now before us. The reasonable construction of all of the language used in the charter of appellee was intended to authorize appellee to actively engage in the handling of milk and cream as the bill alleges was done.

It is next contended that appellee is acting as a corporation for pecuniary profit in excess of the powers conferred upon it by its charter and in violation of the nonprofit corporation act of this State; that there is no legal foundation for a nonprofit corporation acting as a corporate agent for the transaction of commercial business for the profit of its members; that co-operative marketing companies are usually regarded as corporations for pecuniary profit; that the contractual stipulation for the issuance of an injunction is contrary to law; that the provision for liquidated damages is an evasion of the law.

We do not deem it necessary to consider each of these points in detail for the reason that in many of the cases which are cited in this opinion all of these questions are determined. For a great many years Illinois has encouraged, by statute, co-operative marketing. The last legislature passed a most complete

and comprehensive statute upon that subject. In fact, most of the questions raised upon this appeal are provided for in that statute by express terms, including injunctions, liquidated damages and solicitor's fees. Other States, including Kansas, Washington, Oregon, California, Texas, Mississippi, North Carolina and Kentucky, have passed similar statutes. Most of the questions raised upon this appeal have never been before the Supreme Court of Illinois but they have been before the courts of these other States and the decisions are substantially uniform. Most of these decisions are quite lengthy and it will be impossible within the reasonable limits of an opinion to quote from them at any considerable extent, therefore we will merely state what these cases have held. It is sufficient to say, however, that the decisions rendered by the courts of the various States have considered in great detail all of these questions and it is only necessary to read those decisions to become fully convinced that there is no merit in any of the contentions made by appellant. In most of the cases where these questions have been considered the corporation has been organized under a co-operative statute, and while it was not a corporation for pecuniary profit, it was engaged in substantially the same character of business appellee was engaged in, the business was carried on in substantially the same manner, and in each of these cases it was held that the corporation was not engaged in a business which produced pecuniary profit for its members. *Kansas Wheat Growers' Ass'n v. Schulte,* 113 Kan. 672, 216 Pac. 311; *Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S. W. 1101; *Brown v. Staple Cotton Co-operative Ass'n,* 132 Miss. 859, 96 So. 849; *Tobacco Growers' Co-operative Ass'n v. Jones,* 185 N. C. 265, 117 S. E. 174; *Burley Tobacco Society v. Gillaspy,* 51 Ind. App. 583, 100 N. E. 89; *Oregon Growers' Co-operative Ass'n v. Lentz,* 107 Ore. 561, 212 Pac. 811; *Anaheim*

*Citrus Fruit Ass'n v. Yeoman,* 51 Cal. App. 759, 197 Pac. 959.

If appellee had been organized under the Illinois statute of 1923, this case would clearly fall within the rule announced in the cases above cited and appellee would of necessity be held to be a corporation not for pecuniary profit. The only difference between this case and those cited is that appellee was organized under the general statute governing corporations not organized for pecuniary profit, and appellant contends that the business carried on was for pecuniary profit under the decisions of this State and for that reason appellee cannot maintain this bill. If, under the facts stated in the cases above cited, those corporations were not doing a business for pecuniary profit, it is difficult to see how appellee could be classed as a corporation for pecuniary profit, when it was engaged in exactly the same kind of business those other corporations were engaged in. From our examination of the authorities cited and from the statute of our own State, we hold that because of the fact that appellee distributed all of the proceeds of sale among its members, after the deduction of expenses, that appellee was not a corporation doing business for pecuniary profit, and was legally organized under the statute providing for corporations not for pecuniary profit.

In several of the States the courts have been called upon to determine the right of a co-operative corporation not for pecuniary profit, to an injunction against one of its members who has entered into a contract for the sale of products and has later refused to comply with the contract. In many of the cases cited, as in the case now before us, the contract of membership in the corporation provided that an injunction might be issued to prevent a violation of the contract. In the following cases it was held that the corporation has the right to an injunction under those circum-

stances and that an injunction was the only adequate remedy of the corporation. *Washington Cranberry Growers' Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773; *Phez Co. v. Salem Fruit Union,* 103 Ore. 514, 201 Pac. 222; *Owen County Burley Tobacco Society v. Brumback,* 128 Ky. 137, 107 S. W. 710; *Hollingsworth v. Texas Hay Ass'n* (Tex. Civ. App.), 246 S. W. 1068; *Kansas Wheat Growers' Ass'n v. Schulte, supra; Orange Growers' Co-operative Ass'n v. Lentz, supra.* It has also been held that the corporation is entitled to an injunction even though the contract provides for liquidated damages in the case of a breach thereof. *Bradshaw v. Millikin,* 173 N. C. 432, 92 S. E. 161, L. R. A. 1917 E 880; *Pierce County Dairymen's Ass'n v. Templin,* 124 Wash. 567, 215 Pac. 352; *Grant County Board of Control v. Allphin,* 152 Ky. 280, 153 S. W. 417. We think under the facts alleged in this bill, notwithstanding the fact that the contract provided for both liquidated damages and an injunction, appellee was entitled not only to liquidated damages, but also to an injunction restraining appellant from selling his products to persons other than appellee, upon the theory that appellee had no other adequate remedy at law.

Appellant contends that the allowance of a solicitor's fee was illegal. The answer to this contention is that the contract executed by appellant expressly provided for a solicitor's fee. Such provision was not contrary to public policy. Appellant was a free moral agent and could make an agreement for a solicitor's fee if he saw fit so to do, and after he made such an agreement he will not be heard to say in a court of equity that it was contrary to law and should not be allowed, especially after appellant violated his contract and put appellee to the expense of a lawsuit and necessitated the employment of an attorney.

Appellant insists that a court of equity will not enforce an executory contract whereby a corporation

seeks to continue ultra vires conduct; and that the decree is contrary to the law for the reason that it provides for the specific performance of a unilateral contract under the guise of an injunction. So long as a contract is wholly executory on both sides neither party is estopped to deny the power of the corporation. If a contract is executed by one party, the defense of ultra vires is not available to the other party. *McNulta v. Corn Belt Bank,* 164 Ill. 427. Appellant's position is that the contract is executory because appellee has not handled his particular milk. This might be true if there was one contract to handle the milk of but one party, but this contract in fact consists of over 7,000 contracts. By their terms they are to be read together, making one agreement. The handling of defendant's small quantity of milk is a mere trifle compared with the handling of milk under all of these contracts. For this reason this contract is practically executed in so far as the appellee is concerned, and appellee would be entitled to enforce it. *Shelby v. Chicago & E. I. R. Co.,* 143 Ill. 385; *Kadish v. Garden City Equitable Loan & Building Ass'n,* 151 Ill. 531; *Eckman v. Chicago, B. & Q. R. Co.,* 169 Ill. 312. The contract is not unilateral, and while the bill alleges that it is for the specific performance of the contract, yet the prayer is to restrain appellant from selling his milk and cream to persons other than appellee. Some of the authorities cited go to the extent of holding that a bill will lie for the specific performance of a contract of this kind, but it is not necessary to determine that question for the reason that the decree does not grant specific performance but merely enjoins the appellant from selling his products elsewhere. This clearly was within the scope of equity jurisdiction.

It is contended that the contract is not mutual; that the appellant in his contract agrees to do many things, but that the appellee does not agree to do anything.

We do not think this is true. The contract specifically binds both parties for a period of two years. The appellant agrees to sell his milk and cream to appellee, and appellee agrees to market the milk and cream to the best advantage possible. In pursuance of that contract appellee has made preparations, at considerable expense, to handle the milk and cream of its various producers, and the bill alleges that it is now ready and willing to do so, but that the appellant has failed. A promise for a promise is a good consideration. *Kissack v. Bourke,* 224 Ill. 357. The contract is under seal and therefore imports a consideration. *Corbett v. Cronkhite,* 239 Ill. 9.

We find no reversible error and the decree will be affirmed.

*Decree affirmed.*