Farmer's Educational & Co-Operative Union of America, Illinois Division, Appellant, v. William Langlois, Appellee.

Gen. No. 8,195.

Opinion filed September 2, 1930.

DONOVAN, BRAY & GRAY, WALTER F. LYNCH and CLAUDE M. GRANGER, for appellant.

HUNTER & MINOR and JOHN A. MAYHEW, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is an appeal by the Farmer's Educational and Co-operative Union of America, Illinois Division, appellant, hereinafter referred to as complainant, from a decree of the circuit court of Kankakee county, dismissing its bill for an injunction and accounting against William Langlois, hereinafter called defend-

ant, for want of equity, and dissolving the temporary injunction.

The complainant is a co-operative marketing association organized under the "Co-operative Marketing Act of Illinois," Cahill's St. ch. 32, ¶ 455 (1) *et seq.* The complainant is composed of 2,700 farmer members, producers of corn and other farm products and is engaged in marketing the products of its members without pecuniary profit to itself.

William Langlois, the defendant, is a farmer and became a member of the complainant association, and entered into an agreement with it on April 26, 1927, under which he was authorized to market his grain and certain other farm products for a period of 10 years from the time the contract became operative and thereafter until the contract was terminated by notice of either of the parties.

The defendant delivered grain to the complainant until some time in December, 1928, when he failed and refused to deliver his grain, whereupon the complainant filed its bill for an injunction to restrain him from delivering the grain and other products included within his contract to any one other than complainant for the period of time provided therein, and prayed for an accounting to ascertain the amount of liquidated damages due for grain sold to others in violation of the contract into which he had entered with the complainant.

A temporary injunction was issued, as provided by the Co-operative Marketing Act, upon the complainant giving bond as directed by the court. The defendant entered a motion to dissolve the injunction. On a hearing of the motion the court dismissed the bill and dissolved the injunction.

In its bill, the complainant alleged that it was incorporated on the 26th of February, 1926, by producers of agricultural products to minimize specula-

tion and waste in the production, distribution and marketing of agricultural products, to stabilize agricultural markets, and to handle co-operatively agricultural products of its producer members without any pecuniary profit to itself; that in order to accomplish said purposes, a large number of producers became members of it and each of said producers entered into an agreement with the complainant and with each other for co-operative marketing of the merchantable grain and other products produced by them; that the defendant became a member and entered into an agreement in writing on April 26, 1927, with the complainant; that by said agreement the defendant agreed to deliver all of the merchantable grain and products produced or acquired by him to the complainant from the date of said agreement for a period of 10 years and thereafter continuously unless canceled by written notices given by the parties between the 15th day of December and the 30th day of December inclusively, of any year after the expiration of the 10-year period; that the defendant constituted the complainant his sole and exclusive agent for the purpose of handling and marketing his grain and other products and said complainant agreed to market said grain and other produce in such a way as it would deem best for the mutual benefit of the contracting parties; that all of said agreements were to be deemed one contract between the complainant and all of said producer members.

It is further alleged that it is provided in said agreement that it should become and be in full force and effect when the signatures of producers representing 55 per cent of the farmers of defendant's township or trade territory had been secured to similar agreements and for all matters of signatures and for all statements of fact in connection therewith, the written statement of the complainant signed by its secretary

or his assistant should be absolutely conclusive; that the signatures of producers representing 55 per cent of the farmers in the defendant's township or trade territory were secured and that a written statement to that effect, signed by the secretary of complainant, was given to the defendant on or about October 5, 1928; that on October 5, 1928, the defendant was notified to deliver his grain and produce to the local receiving station provided by the complainant at Manteno, Illinois, and that the defendant failed, neglected and refused to deliver the agricultural products covered by his agreement to it at Manteno, or at any other point or place; that the defendant produced 2,800 bushels of corn for market and intended by him to be marketed, and that in December 1928 he marketed said 2,800 bushels of corn to persons other than complainant.

It is also alleged that unless restrained, the defendant will continue to sell, consign and market all his merchantable grain and produce to persons other than the complainant and that the defendant has informed the complainant that he will not deliver any of the merchantable grain produced by him for market; that the complainant has performed all the terms and covenants contained in the agreement on its part to be performed and sets forth that it has entered into similar agreements with 2,700 other farmer producers; that it is and has been at all times ready and able to receive, handle and market merchantable grain and other products produced by the defendant and other producer members, and since its organization it has received, handled and marketed agricultural products by its members and has marketed such products for the mutual advantage of the parties; that it is ever willing and able to perform its contract and offers to perform the contract and agrees to receive, handle and market the grain and products produced or acquired

by the defendant and other producer members and offers to do full equity in the premises.

It is charged that the complainant relied upon the agreement of the defendant and like agreements of other producer members, had made contracts establishing receiving stations and plants, borrowed money, hired employees and expended large sums in the foregoing acts and contracted to spend further sums in the foregoing activities, all with the expectation of receiving delivery of the merchantable grain and products of its said producer members, including the defendant; that because of the co-operative character of complainant it would be extremely difficult to ascertain the damages that would be suffered by it in case the defendant should refuse to deliver its products in accordance with the terms of its agreements; that a remedy at law is inadequate against any producer who might fail to deliver the commodities which he is obligated to deliver by the agreement, etc.

The bill sets forth a part of the contract as follows: ''The producer agrees that in the event of a breach by him of any material provision hereof, particularly as to the delivery or marketing of any products either to or through the Union, the Union shall, upon proper action instituted by it, be entitled to an injunction to prevent further breach hereof and a decree for a specific performance hereof according to the terms of this agreement.''

The above and foregoing allegations of the bill, we think, are sufficient to be considered in determining the questions involved in this cause.

The answer filed by the defendant consists largely of a detailed denial of the allegations of the bill. It does, however, make some certain affirmative allegations. Appellee admits signing an agreement similar to the copy attached as an exhibit to the bill. He alleges however, that at the time he signed it, he was

ill and does not remember all of the circumstances that took place, and that there were four or five men present, who said they were going to stay until he signed it, and that after an hour he yielded and signed it.

The effect of his answer in this respect is that he signed the agreement because so much pressure had been brought to bear upon him and that by the conduct of certain members of the complainant he was coerced into signing the agreement.

A number of reasons are assigned by the complainant for a reversal of the decree.

The defendant insists that the contract is void; that there is no evidence that 55 per cent of the producers within the alleged territory signed similar agreements at any time; that the notice sent to the defendant under date of October 5, 1928, does not comply with section 25 of the contract because it does not contain a statement of facts but simply conclusions and that the complainant failed to prove the allegations of its bill.

The "Co-operative Marketing Act" of June 21, 1923, provides in section 18, that the association and its members may make and execute marketing contracts similar to the contract entered into between the complainant and the defendant. Subparagraph "b" of section 19, Cahill's St. ch. 32, ¶ 455 (19) (b), reads as follows:—

"In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract and to a decree of specific performance thereof. Pending the adjudication of such an action and upon filing a verified complaint showing the breach or threatened breach, and upon filing a sufficient bond, the association shall be entitled to a temporary restraining order and preliminary injunction against the member."

*Milk Producers Marketing Co. v. Bell,* 234 Ill. App. 222, is a case in which the appellee, a corporation, filed its bill against the appellant Bell in which it sought to restrain the appellant by injunction from selling milk to persons other than to appellee in violation of a contract between appellant and appellee and for an accounting of milk previously sold. This court held a contract quite similar to the one involved in this cause valid, and awarded the Marketing Company the injunctive relief it sought.

In our opinion at pages 231–232 among other things we said: "In several of the States the courts have been called upon to determine the right of a co-operative corporation not for pecuniary profit, to an injunction against one of its members who has entered into a contract for the sale of products and has later refused to comply with the contract. In many of the cases cited, as in the case now before us, the contract of membership in the corporation provided that an injunction might be issued to prevent a violation of the contract. In the following cases it was held that the corporation has the right to an injunction under those circumstances and that an injunction was the only adequate remedy of the corporation. *Washington Cranberry Growers' Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773; *Phez Co. v. Salem Fruit Union,* 103 Ore. 514, 201 Pac. 222; *Owen County Burley Tobacco Society v. Brumback,* 128 Ky. 137, 107 S. W. 710; *Hollingsworth v. Texas Hay Ass'n* (Tex. Civ. App.), 246 S. W. 1068; *Kansas Wheat Growers' Ass'n v. Schulte, supra; Grange Growers' Co-operative Ass'n v. Lentz, supra.* It has also been held that the corporation is entitled to an injunction even though the contract provides for liquidated damages in the case of a breach thereof. *Bradshaw v. Millikin,* 173 N. C. 432, 92 S. E. 161, L. R. A. 1917 E 880; *Pierce County Dairymen's Ass'n v. Templin,* 124 Wash. 567, 215 Pac. 352; *Grant*

*County Board of Control v. Allphin,* 152 Ky. 280, 153 S. W. 417. We think under the facts alleged in this bill, notwithstanding the fact that the contract provided for both liquidated damages and an injunction, appellee was entitled not only to liquidated damages, but also to an injunction restraining appellant from selling his products to persons other than appellee, upon the theory that appellee had no other adequate remedy at law.''

In view of the object for which the complainant was organized, the failure of the contracting parties to comply with the agreement to deliver grain in accordance with the terms thereof will defeat and destroy the purposes for which it was intended.

If the members of the association fail to deliver their grain, complainant will necessarily suffer injury and damages in an amount which cannot be ascertained in that it will be unable to secure the amount of grain which it was organized to handle and which it has prepared to handle and will be unable to stabilize grain markets or to prevent speculation or waste in the production, distribution and marketing of products. Complainant will also be damaged in an amount which cannot be ascertained in that the pro rata cost of its members, who deliver grain in accordance with their contract, will be raised to a degree which cannot be easily estimated.

According to the answer of the defendant, he attempts to avoid the contract on the ground that he was intimidated and coerced into signing it by the solicitors of the Union. All of the witnesses of the complainant who were present at the time the defendant signed the marketing agreement, testified that no duress or coercion was used.

Furthermore, almost two years had elapsed from the time he signed the agreement before any such complaint was made. The defendant offered no testimony

in support of his contention of duress and intimidation.

From an examination of the record, we are of the opinion that the defendant has failed to establish any fact alleged or to contradict or impeach the testimony of the complainant's witnesses relative to the execution of the contract.

In support of the defendant's contention that the contract is void because of its uncertainty, the point is made that the language "township or trade territory" is so uncertain that it cannot be determined what is meant by it. The defendant is in no position to raise this question because the agreement and by-laws especially provide that the decision as to the extent of the trade territory shall be determined by the organization and that the notice received by the defendant conclusively binds him as to the decision concerning the territory.

Paragraph 14 of the contract is as follows: "The second party hereby agrees that inasmuch as the boundaries of its trade territory may vary in the judgment of individuals, the determination of said boundary shall be decided exclusively by first party after receiving such suggestion as second party may care to offer thereon."

Furthermore, it appears from the record that the territory included the township of Manteno, 36 sections, part of Rockville and Sumner, that sections 7, 18 and 19 in Sumner Township were included. Those are the sections that adjoin the town of Manteno and join each other and extend north and south.

We think from what is disclosed by the record that the territory is compact and contiguous. We observe no uncertainty in the contract in this respect. The notices sent out by the president and secretary of the complainant contained a statement of ultimate facts and fully complied with the agreement. The defend-

ant cannot be heard to say that he did not receive sufficient notice of the organization of the trade territory.

Appellee in his answer denies that the signatures of producers representing 55 per cent of the farmers in the defendant's township or trade territory were secured, as alleged in the bill of complaint, on October 5, 1928, or at any time thereafter or that the complainant did not have the signatures of producers representing 55 per cent of the farmers or producers in the defendant's township or trade territory.

It will be remembered that the defendant made application for membership and entered into a written agreement with the complainant which provided that it should become in full force and effect when the signatures of producers representing 55 per cent of the farmers of defendant's township or trade territory had been secured to similar agreements.

It is further provided that as to all matters of signatures and as to statements of facts in connection therewith, the written statement of the union, signed by the secretary or his assistant, should be absolutely conclusive.

The record also shows that the complainant did have 55 per cent of the producers in the said trade territory. The evidence further shows that the defendant was notified as provided for in the agreement that the required signatures had been obtained for the organization of the Manteno Farmers' Union Co-operative Association.

It is urged by the defendant that there is no proof that he was a producer within the alleged trade territory. On the oral argument of his cause in this court it was insisted that the record does not disclose the fact that the defendant lives within the trade territory. It was stated by counsel representing the complainant that this question was not raised in the court below. If it be true that the question was not raised

in the circuit court, it could not be raised for the first time in this court. But whatever the fact may be in that regard, the notice to the defendant under the provisions of the agreement and by-laws binds him to the fact of membership. If he was a member, then it was his duty to abide by the by-laws of the association and the terms of the contract.

We have particularly examined the contract in view of the contention of the defendant that it was uncertain and void for the want of mutuality in its obligations.

By the terms of the agreement, complainant has agreed to receive, handle and market the grain and other products delivered to it by the defendant for a definite period of time and to pay to the defendant the net proceeds of sales without any compensation. Defendant has agreed to deliver the grain and other products produced for him to the complainant for marketing for such period of time.

When the case of *Milk Producers Marketing Co. v. Bell, supra,* was before us in discussing the contract at page 233–234, we said:—"It is contended that the contract is not mutual; that the appellant in his contract agrees to do many things, but that the appellee does not agree to do anything. We do not think this is true. The contract specifically binds both parties for a period of two years. The appellant agrees to sell his milk and cream to appellee, and appellee agrees to market the milk and cream to the best advantage possible. In pursuance of that contract appellee has made preparations, at considerable expense, to handle the milk and cream of its various producers, and the bill alleges that it is now ready and willing to do so, but that the appellant has failed. A promise for a promise is a good consideration. *Kissack v. Bourke,* 224 Ill. 357.'' In the instant case the complainant has made preparations at considerable expense to handle

the products of the defendant and others and it is ready to carry out the terms of the agreement.

Mutuality of obligation means that both parties are bound or neither are bound. In other words there must be a valid consideration. Without a valid consideration, a contract cannot be enforced in law or in equity. What was said in *Milk Producers Marketing Co. v. Bell, supra,* quoted above, applies here.

In conclusion, since the complainant association was formed for the purpose of marketing the products of its members, it has only one way of obtaining such products, and that is by the members delivering their products in accordance with the terms of the marketing contract.

The function of the organization is limited to selling and handling the products of its members and it has provided facilities and made arrangements for this purpose. It is co-operative marketing that was provided for by the charter of complainant and adopted by its uniform contract and by-laws.

We think it is the purpose of the law to protect a member of the organization against one of its fellow members who violates his agreement. The contract in our opinion is legal and the defendant voluntarily became a party thereto, and should be held to comply with the terms and provisions thereof, and if he fails to do so, the complainant should be permitted to go into a court of equity in order that its members might be protected.

We conclude, therefore, that the chancellor erred in dismissing the bill and in dissolving the temporary injunction; that the order and decree should be reversed and case remanded with directions to the chancellor to vacate the order dismissing the bill and dissolving the injunction; and the circuit court of Kankakee county is directed to enter a decree in accordance with this opinion.

*Reversed and remanded with directions.*