210 A.2d 573.

UNITED MASTER PLUMBERS ASSOCIATION OF RHODE ISLAND, INC. *vs.* BOOKBINDER PLUMBING & HEATING CO., INC.

MAY 24, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This is an action of assumpsit for breach of contract brought by United Master Plumbers Association of Rhode Island, Inc. for the use and benefit of Bassett & Company, Inc. against Bookbinder Plumbing & Heating Co., Inc. The association will sometimes hereafter be referred to as the use plaintiff and Bassett as the legal plaintiff. The defendant demurred to the declaration on the ground among others that the use plaintiff had no legal standing to sue in its own name.

The demurrer was overruled and defendant duly excepted thereto. Thereafter the case proceeded to trial on the merits before a justice of the superior court without a jury. At the conclusion of the evidence defendant moved to dismiss on the same ground alleged in its demurrer. The trial justice refused to entertain the motion but said he would decide the question in defendant's favor if at the argument on the merits it could convince him that the use plaintiff was not in law a proper party plaintiff.

After the argument he decided to the contrary and entered a decision on the merits in favor of the use plaintiff and noted defendant's exception thereto. The defendant filed a bill of exceptions including that exception, its exception to the overruling of its demurrer, and two exceptions to evidentiary rulings. However, it appears that only the exception to the overruling of the demurrer was allowed by the trial justice and no steps were taken by defendant in this court to establish the truth of the other exceptions. Consequently the only exception properly here for our consideration is to the overruling of the demurrer.

The controversy between the parties arose out of the following facts. The defendant and the legal plaintiff Bassett were members of the use plaintiff association. As such members each had agreed to be subject to the following bylaw of the association:

"The member whose bid is tabulated by the bid depository as the lowest bid shall be declared to be the lowest bidder and no other member of this Association shall accept an award of a contract from any general contractor or awarding authority for a job on which he is not declared to be the lowest bidder. Where a member who is not declared to be the lowest bidder accepts an award of such a contract, said member shall pay to the lowest bidder a sum of money equal to ten per cent (10%) of the amount of the low bid, which sum shall be collectible by an action at law brought in the name of this Association for the benefit of the lowest bidder."

During the summer of 1962 Bassett and defendant each submitted a bid on a plumbing job with a general contractor on a building contract with Hoechst Chemical Co. In accordance with the above-quoted bylaw of the association defendant deposited its bid by mail to the Rhode Island Hospital Trust Company, the acting bid depository for the association. It also telephoned the bid to the general contractor who confirmed it on September 15, 1962. After it

had received all bids submitted, including one from Bassett, the general contractor informed defendant on September 15 that it was the low bidder. However, when the bids were opened at the Rhode Island Hospital Trust Company on September 27, 1962 it was learned that defendant's bid had not been recorded at the bid depository as required by the bylaw and therefore it was not "declared to be the lowest bidder." Bassett was so declared but nevertheless defendant entered into a contract for the job with the general contractor. As a result the association called upon defendant to pay 10 per cent of the low bid for the benefit of Bassett as per the implied agreement under the bylaw, and upon defendant's refusal it brought the instant action.

In the posture of the case on defendant's sole exception to the overruling of its demurrer to the declaration we are not concerned with the merits of the case on the facts alleged and admitted by the demurrer but only with the narrow question whether the association was in law authorized to bring an action in its own name against defendant. The defendant contends that it was not, and relies upon the well-established rule at common law that generally an action must be brought in the name of the party in whom the legal interest in the contract was vested. 1 Chitty, Pleading (7th Eng. ed.), chap. 1, p. 2. It concedes that there are certain well-recognized exceptions to this rule but argues that the use plaintiff association does not qualify under any of them.

In reply the association contends that defendant has misconceived the relation created by the bylaw. It argues that by virtue of the express authorization of it to bring suit in its own name it is the legal plaintiff. For this reason it claims that it is a proper party plaintiff and as authority for its contention it cites *Milk Producers Marketing Co.* v. *Bell*, 234 Ill. App. 222. Moreover, it also claims support for its position in *Blue Star Navigation Co.* v. *Emmons Coal Mining Corp.*, 276 Pa. 352, which defendant relies on for

its contention. The association argues that defendant misunderstands that case and that when it is rightly understood it cannot be cited for the party status relied upon by defendant here, namely, that the association is the use plaintiff and that Bassett is the legal plaintiff. On the contrary it argues that the bylaw is not a contract between Bassett and defendant but rather that the agreement therein is one with the association, clothing it with the legal interest necessary to authorize it to bring suit in its own name.

In our opinion the resolution of this question will decide the issue raised by defendant's demurrer. If Bassett and not the association has the real interest created by the bylaw it is the true legal plaintiff regardless of the intention manifested therein to confer upon the association authority to sue in its own name. We think the bylaw in effect posits a potential contractual relation between all the members of the association and becomes a true contract which is breached whenever a situation develops between any of them such as is alleged in the declaration here. The manifest purpose of the bylaw is, by assent of the members, to create a special remedy in the nature of liquidated damages for such a breach. The real legal interest is in the member who has been injured by the breach and not in the association. It is merely the agent of the members whom they have delegated to prosecute the remedy for the breach, and hence it is the use plaintiff. As such, it does not have the legal interest and in the absence of statute it cannot bring suit in its own name. *Royal Insurance Co.* v. *Kirwin*, 51 R. I. 165. See also Puterbaugh Common Law Pleading and Practice (10th ed.), §12, p. 8.

*Blue Star Navigation Co.* v. *Emmons Coal Mining Corp.*, *supra*, cited by defendant illustrates the application of this principle. In that case Blue Star sued for the use of Ainesworth Coal & Iron Company to recover damages for Emmons' failure to accept a cargo of coal which it had bought from Ainesworth. The court recognized that where a use

plaintiff performs a contract as assignee he is compelled in the absence of statute to use the name of the legal plaintiff or assignor. In that case Blue Star was the assignee of Ainesworth and was therefore the use plaintiff.

On the other hand *Milk Producers Marketing Co.* v. *Bell, supra,* relied upon by plaintiff here is clearly not in point. There the members of the company which was a co-operative agreed to deliver all their milk and cream to the company for a specified period and continuously thereafter until canceled by a written notice from the company. The company on its part agreed to market the milk and cream as it should deem best for the mutual benefit of the members and all contracts were deemed to be one contract between the company and the producers. Upon the defendant's refusal to deliver his milk and cream the company brought a suit in equity to enjoin him from selling his milk and cream to anyone else.

It is obvious from the above facts that the company had a legal interest which it was seeking to protect. Its suit was not for the use of any of its individual members but for its own benefit under its contract with the producers. Moreover, the case did not involve an action at law brought by an assignee. And in any event if it were such an action it probably would have been upheld since Illinois has a statute which expressly authorizes an assignee of any chose in action not negotiable to sue in his own name. Cahill Ill. St., chap. 110, par. 18.

In this state G. L. 1956, §9-2-8, authorizes an assignee of a nonnegotiable chose in action to sue in his own name only where the assignment is in writing and there must be evidence to establish the making and delivery thereof. *Plotkin* v. *Danakos,* 71 R. I. 24. In the case at bar there is no such evidence.

However, plaintiff contends that the bylaw is sufficient authority for it to sue in its own name. We disagree. If

the bylaw did anything in the way of creating a legal interest, it was an interest in behalf of Bassett and its associate members and not in the association. That body was only a convenient means of enforcing such interest. The bylaw did not and could not have the effect of attaching the rights of Bassett to the association. *Moore & Sinott* v. *Watson,* 20 R. I. 495. In fact the parties could not by enacting a bylaw make it possible for the association to bring an action in its own name contrary to the rules of pleading at common law. Whether one is a proper party plaintiff, it has been held, is a matter of law and may not be controlled by the parties to the action. *Ortiz Oil Co.* v. *Railroad Comm'n,* Tex. Civ. App., 62 S.W.2d 376.

The defendant's exception to the overruling of its demurrer to the declaration is sustained and the case is remitted to the superior court for further proceedings.

*Anthony A. Giannini,* for plaintiff.

*Ronald H. Glantz,* for defendant.