[No. 18885.    Department One.    January 28, 1925.]

·WASHINGTON WHEAT GROWERS' ASSOCIATION, *Respondent*, v. IRVIN T. LEIFER, *Appellant*.[1]

ASSOCIATIONS (1-1)—ORGANIZATION OF ASSOCIATION—CONTRACT—CONSTRUCTION. In an agreement to form a non-profit co-operative association, naming fifteen men who shall be the organization committee, a provision that the committee might elect new members in place of any who might resign or be unable to act, empowers a portion of those named to select others in place of those who were not qualified because they did not become members of the association.

SAME (1-1). An agreement to form a non-profit co-operative association providing that the corporation shall not be formed unless the agreement is signed by at least ten per cent of the wheat growers of three states, fixes a condition precedent, the burden of proof of which rests upon the plaintiff in an action to enforce the agreement.

SAME (1-1). In such a case, the burden is met, under a provision in the agreement that, for all matters of percent of signatures, the decision of the organization committee shall be absolutely conclusive, where it appears that at a meeting the committee made a written report addressed to the association, that the signatures of 25 per cent of the wheat growers in the three states had been secured, and the association acted on the report by ·declaring the marketing agreements in full force and effect, giving notice of· the resolution to all the signers.

SAME (2-1)—MEMBERSHIP—LIABILITY OF MEMBERS. A marketing agreement whereby members of the association agreed to deliver all their wheat to the association is shown to have been breached where a member refused to deliver his wheat to the association but delivered a certain quantity thereof to others.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered March 3, 1924, in favor of the plaintiff, in an action for an injunction and for damages, tried to the court. Affirmed.

*Samuel P. Weaver (Ross C. Fisher*, of counsel), for appellant.

*Garrecht & Twohy*, for respondent.

[1]Reported in 232 Pac. 339.

BRIDGES, J.—The plaintiff, which is a corporation under the laws of this state, sought to enjoin the defendant from selling or delivering his wheat to any person other than the plaintiff, and for damages on account of such amount as had already been delivered to others. Defendant has appealed from the judgment of the court granting the relief asked.

Various wheat growers in the states of Washington, Idaho and Oregon executed an agreement among themselves which had for its ultimate object the organization of a corporation to be known as the Washington Wheat Growers' Association, and the furnishing to that organization by the members thereof any wheat they might grow. Those portions of the agreement material to this action are: that each signer will become a member of the Washington Wheat Growers' Association, a non-profit cooperative association to be later organized; the affairs of the association are to be controlled by a board of fifteen directors, to be selected in a designated manner. Each signer agreed, among other things, that his signature to the agreement should also be considered his signature to a marketing agreement which was made a part of the association agreement, such agreement being to the effect that each member of the association would deliver his wheat to the association to be marketed by it, and providing for injunction and damages for breach thereof. The main agreement appointed what is called an organization committee whose business it was to organize the corporation. It also further provided that

"If by March 1, 1921, signatures by growers or the owners or lessors or lessees of land covering 25 per cent of the production of wheat by bushels in 1918 in Washington, Idaho, and Oregon, taken as a whole, shall not have been secured for this agreement and

similar agreements being circulated in Idaho and Oregon, the organization committee must so notify every subscriber hereto before July 8 (1921) by notice mailed to him at the address noted below; and the subscriber shall have the right to withdraw his signature hereto by written notice to the secretary of the organization committee between July 8 and July 20 (1921). If all signatures are not then withdrawn the organization committee shall, in its discretion, determine whether or not to proceed with the organization work and with the marketing plans under the marketing agreement hereinbefore set forth but under no condition shall the committee proceed at all unless at least 10 per cent of the said total production have permitted their signatures to stand.''

But if, by the date named, the above mentioned twenty-five per cent shall have been secured, then the agreement shall be binding and there shall be no right of withdrawal. There are certain other special features of the contract to which we will later refer.

Articles of incorporation were executed on August 5, 1920, and were filed with the secretary of state on August 9, 1920. Thereafter the corporation commenced to do business.

Appellant first contends that the judgment was wrong because those who actually organized, or who were the signers of the articles of incorporation, were not the ones named in the association agreement, and for that reason the conditions precedent have not been complied with. The agreement names fifteen men who shall be the organization committee and whose duty it shall be to organize the corporation. Fifteen men actually signed the articles of incorporation, but only six of them were of those who had been named in the agreement. The article of the agreement naming this committee also provided that it might increase its membership and elect new members in place of any who might resign or be unable to act, and take such

other steps as they might deem advisable in order to secure signatures to the agreement and to organize the corporation. Under this provision it was not necessary that those executing the articles of incorporation should be identical persons named in the articles of agreement.

It is further contended that appellant could not be made liable on account of his signature to the association and marketing agreements unless it was shown that, within the time provided in the agreement, to wit, by March 1, 1921, the growers of at least ten per cent of the wheat grown in the three states should sign the agreement and remain bound thereto, and that the burden of this proof was on the respondent, and that there was an entire failure of this proof. We are disposed to the opinion that appellant's contention concerning the necessity for such proof is sound. The agreement which he signed seems to contemplate that no signer should be bound unless by March 1, 1921, persons representing not less than ten per cent of the wheat had signed and remained bound. This is a condition precedent upon which the appellant had a right to rely. But we are of the view that the necessary proof in this regard was made by the respondent. One portion of the agreement which appellant signed reads as follows: "For all matters of acreage, bushelage, or per cent of signatures and for all statements of fact in connection herewith, the written statement of the organization committee signed by its chairman shall be absolutely conclusive, with or without notice to the subscriber." This paragraph authorizes the organization committee to determine whether the necessary signatures have been obtained to the agreement. The testimony shows that this committee, at a meeting held March 1, 1921, made the following report:

"We, the Organization Committee, designated by the Washington Wheat Growers Marketing agreement, to on this date determine and establish whether or not a sufficient number of signatures by growers of wheat, or the owners or lessors or lessees of land, to the marketing agreements of the Wheat Growers Association of Washington, Idaho and Oregon, have been secured, to cover 25 per cent of the production of wheat by bushels in said states in the year 1918, beg leave to report that we have diligently attended to the duty imposed on this committee by said marketing agreements, and after a careful canvass of the agreements regularly signed, we find that a sufficient number of signatures by growers of wheat, or the owners or lessors or lessees of land, have been secured to make up the required amount, and you are advised that said marketing agreements are binding obligations, and you are also advised that we are causing a printed copy of this notice and finding to be sent to the given address of the subscribers to said marketing agreement."

The foregoing was addressed to the Washington Wheat Growers' Association. The board of directors, having received the report, passed a resolution declaring all the marketing agreements to be in full force and effect, and copies of this report and resolution were mailed to the various members, including the appellant. This proof was ample to show that the necessary signatures had been obtained within the time provided. Indeed, it shows that not only the necessary ten per cent, but twenty-five per cent had been secured.

It is further contended that there is no proof that the corporation was organized after the required number of signatures had been obtained. We do not see how appellant can raise this objection here, because this is a suit to enforce the marketing agreement and not for any subscription to the capital stock of the corporation. The organization of the corporation was but

a means to an end, that end being the marketing agreement upon which this action is necessarily based.

There was either proof or stipulation of facts showing that the appellant had refused to deliver his wheat to the association under the marketing agreement, and had in fact delivered to other persons a certain quantity of wheat, and that, under the agreement, if plaintiff was entitled to recover anything, it was the amount fixed in the judgment. Under all the proof and the stipulations, we are convinced that the ruling of the trial court was right, and the judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, and MAIN, JJ., concur.