[No. 19087. Department Two. June 26, 1925.]

WENATCHEE DISTRICT CO-OPERATIVE ASSOCIATION, *Respondent*, v. ARTHUR H. MOHLER *et al.*, *Appellants.*[1]

ASSOCIATIONS (1-1)—ORGANIZATION—CONTRACT—VALIDITY—FRAUD OF OFFICERS—EVIDENCE—SUFFICIENCY. The provision in a cooperative marketing association contract (which was not to be effective unless signed up by the owners of 4,200 carloads of apples) that the tonnage shall be conclusively ascertained by the association by a tabulation of the estimated tonnage in each contract signed, does not preclude contesting the same for fraud, although the directors acted in good faith in making the determination that 4,200 cars had been signed up, where it appears that the estimate of the board was made up from deliberate padding and misstatements of officers of the association, and was based upon the fraud of such officers.

Appeal from a judgment of the superior court for Chelan county, Truax, J., entered December 22, 1923, in favor of the plaintiffs, in an action for an injunction and for damages, tried to the court. Reversed.

*Corbin & Easton,* for appellants.

*Hughes & Wallace* and *Chadwick, McMicken, Ramsey & Rupp,* for respondent.

MACKINTOSH, J.—The respondent is doing business under ch. 115, Laws of 1921, p. 357 [Rem. Comp. Stat., § 2878], as a cooperative fruit association. The appellants, Arthur H. Mohler and others, being the owners of land in Chelan county, in February, 1921, entered into a grower's contract with the respondent whereby they agreed to deliver their fruit crops for the year 1921 and the following years. In the respondent's complaint, it is alleged that the appellants had violated this contract, and an injunction is asked against their further violation and to compel the per-

[1]Reported in 237 Pac. 300.

formance, and judgment is also asked for the liquidated damages provided by the contract. The answer to the complaint sets up, as one of the affirmative defenses, that the contract was signed upon representations made by the respondent that it would not become effective unless 4,200 cars of apples were signed up on or before March 1, 1921; that the contract was to become inoperative if that number of cars had not been signed; that, on March 4, 1921, respondent gave the appellants notice that the requisite number of cars had been signed up and that, acting upon that notice, the appellants delivered the crop of 1921; that the statement that the requisite number of apples had been signed up was false and fraudulent and made for the purpose of inducing appellants to recognize and carry out the contract; and it was not until the spring of 1922 that appellants learned that only 2,100 cars had been handled by respondent in the previous year and that 4,200 cars had never been signed up; and upon ascertaining this fact the appellants refused to recognize the contract as binding. Many issues are presented by the complaint, answers, reply and cross-complaints, but, as far as necessary to the disposition of this appeal, no more of the pleadings need be noticed.

The contract provides in subdivision 9 as follows:

"If on or before March 1, 1921, thirty-five per cent of the total apple crop of the district based on an estimated tonnage of 12,000 cars for the 1921 season, shall not have been procured in these contracts, then all contracts signed by the owners shall be inoperative. But if such per cent is obtained by said date, all contracts shall thereby become fixed and binding on all parties. *The tonnage shall be conclusively ascertained by the association by a tabulation of all the tonnage estimated in each of the contracts signed.*"

The testimony shows that the board of trustees, on or about March 4, 1921, met and made a tabulation of

the tonnage, which they estimated at 2,956,450 boxes of apples, which would make 4,200 cars of 703 boxes each. The testimony is to the effect that standard cars of apples vary from 630 boxes minimum to 756 boxes maximum, and we find there was nothing improper, under the testimony, in determining that, if the number of boxes stated was actually signed up, they were sufficient to constitute the 4,200 cars provided in the contract. The testimony shows that, as a matter of fact, no such number of boxes had actually and honestly been signed up.

It is the contention of the respondent that, by the terms of the contract, especially the part we have italicized, the determination by the association of the amount of tonnage is conclusive and binding on all parties to the contract, and that the decision of this court in *Washington Wheat Growers' Association v. Leifer*, 132 Wash. 602, 232 Pac. 339, is decisive of the question. It is true that determination by the association is conclusive as to the tonnage which had been obtained, but that determination must be a fair and honest one, and even though the board of directors acted fairly and honestly in making the determination, if it appears that the data upon which the board came to that determination was unfair and dishonest and was the result of deliberate padding and misstatements resulting from the efforts of certain officers of the association in an endeavor to make a showing by March 1 of sufficient signed up tonnage, then the determination by the association under those facts would not be conclusive upon the appellants or those similarly situated.

An examination of the testimony is necessary to determine whether such misrepresentation took place in this case. That examination satisfies us that, although the board of trustees acted in perfect good faith in

determining that a sufficient number of boxes had been signed up to come within the contract terms, yet that the determination was based upon grossly excessive estimates procured by certain officers of the association who, at the time, knew the estimates were exaggerated, and in fact many of the estimates had been increased upon the solicitation of such officers after the landowner had given his honest judgment as to what crop he might reasonably expect. These changes were made at the importunity of these officers and with the avowed purpose of so swelling the list as to make it possible to comply with the requirement as to 4,200 car loads of apples. In addition to this, one of the officers of the association, who was its moving spirit, signed up some 262,000 boxes of apples, none of which was ever delivered, and in the estimate this would amount to 374 carloads, which, deducted from the amount which the association claimed it would have on March 1, would reduce it considerably below the requisite number of cars. When the directors were going over the list of tonnage, a question arose as to this item and it evidently aroused suspicion; for the validity of the subscription was submitted to an attorney who was asked for an opinion as to its legality, and that opinion we find in the files. It is not directed to the association, but to the individual officer, and was plainly made as favorable to the right of the officer to make the subscription as it was possible to do, and was based upon statements made by the officer to the attorney which do not appear anywhere in the record, for the opinion states:

"For the information of those concerned, we desire to state that you have explained to us the terms and conditions of your purchase of the land, and in our opinion you have run onto a remarkably good bargain."

It is unnecessary to go into all the facts surrounding this subscription; suffice it to say that such was the situation that the action of the board of trustees in finding the requisite tonnage was based upon fraud and misrepresentation to such an extent that, when it was discovered, the appellant had a right to withdraw from any further participation in the undertaking. As further evidence of this fraud and misrepresentation, is the fact that the tonnage actually delivered in 1921 was only one-half of that which in March of that year had been declared to have been signed up. Of course, in associations of this kind, trustees are not bound to foretell with exactness the amount of crop that will be handled. Such exactness is beyond human ability; but where, as here, the estimates have been wilfully and fraudulently padded and the actual delivery is so disproportionate to the one claimed to be anticipated, the court will not hesitate to say that the action of the trustees is not binding upon the subscribers.

There is nothing in the record to justify the court in holding that the appellants have waived their right to rely upon the provisions of the contract which we have been discussing, nor is there any element of estoppel against them.

The judgment is reversed and the action dismissed.

TOLMAN, C. J., MITCHELL, and HOLCOMB, JJ., concur.