EDMORE MARKETING ASS'N *v.* SKINNER.

1. AGRICULTURE—CO-OPERATIVE ASSOCIATION—MARKETING CONTRACT—CONDITION PRECEDENT.

Provision in "marketing contract" between farmers' co-operative marketing association, organized under Act No. 84, Pub. Acts 1921, and potato grower that contract was not to become effective until growers of minimum of 50 per cent. of commercial acreage of potatoes grown in market area of association should have signed similar contracts, is condition precedent.

2. SAME—CONTRACT NOT EFFECTIVE WHERE CONDITION PRECEDENT NOT MET.

In action by association for breach of said contract, where evidence was insufficient to show that required acreage was ever signed up, contract never took effect, and verdict was properly directed for defendant.

3. SAME—AMBIGUOUS CONTRACT—CONDITION PRECEDENT.
    Since association prepared its own contract, it can have no ad-
    vantage from uncertainty of terms used, or difficulty in deter-
    mining when condition precedent has been met.

4. ESTOPPEL—KNOWLEDGE OF FACTS ESSENTIAL TO WAIVER.
    Waiver and estoppel rest upon knowledge of the facts.

5. AGRICULTURE—WAIVER—ESTOPPEL—NOTICE.
    In absence of evidence that grower had knowledge that asso-
    ciation used inadequate method of determining whether condi-
    tion precedent had been met before he made last delivery to
    association, he did not, by operating under marketing contract,
    waive condition precedent, nor is he estopped from denying
    that contract is in force.

6. SAME—CO-OPERATIVE ASSOCIATION—MEMBERSHIP INOPERATIVE.
    Where potato grower's exclusive marketing contract with co-
    operative marketing association was inoperative because of
    failure of association to meet condition precedent, grower's
    membership in association arising out of his signing said
    contract was also inoperative, so that provision of by-laws as
    to exclusive marketing and grower's liability for damages for
    nondelivery may not be invoked.

Error to Montcalm; Hawley (Royal A.), J. Sub-
mitted October 10, 1929. (Docket No. 50, Calendar
No. 34,431.) Decided December 3, 1929.

Assumpsit by the Edmore Marketing Association,
a corporation, against George Skinner for damages
for breach of contract. From a judgment on directed
verdict for defendant, plaintiff brings error. Af-
firmed.

*Penny & Worcester,* for plaintiff.

*Brake & Davis,* for defendant.

FEAD, J. Plaintiff is a farmers' co-operative as-
sociation, organized under Act No. 84, Pub. Acts
1921, with headquarters at Edmore, has 143 mem-

bers, and, with 70 like associations, is a member of the Michigan Potato Growers Exchange, which has headquarters at Cadillac and a combined membership of 8,000 growers of potatoes. On November 13, 1924, defendant executed a "marketing contract" with the association, in which he appointed it the "sole and exclusive agent for the sale of all marketable potatoes grown by said undersigned grower, whether as landlord, tenant or otherwise," during the years 1925 to 1929 inclusive, except those retained for home use, given away, or sold at retail. This is the same form of contract that was executed by all the other members of the association and the exchange. The association graded, stored, handled, sold, and shipped the potatoes delivered to it, on delivery advanced a portion of the price set by the Cadillac office, and at the end of the season divided the proceeds of sales, less costs and advances, among the growers. The contract provided:

"20. That this contract shall not become effective until growers of a minimum of 50 per cent. of the commercial acreage of potatoes grown in the market area of the association shall have signed contracts similar to this contract, whereupon the grower shall be notified in writing and this contract shall become binding and operative. The 'market area' shall be construed to mean that territory adjacent to the association's shipping point from which potatoes have been and are ordinarily hauled by the growers for shipment."

On April 23, 1925, the association gave notice to defendant that growers in excess of 50 per cent. of the commercial acreage of potatoes in the market area had signed similar contracts and that his contract had become operative and binding. Defendant delivered to plaintiff the 1925, 1926, 1927, and

part of the 1928 crop. He sold to an independent buyer 37,320 pounds of the 1928 crop of his own and 3,900 pounds belonging to his brother-in-law. Plaintiff brought this suit for damages for failure to deliver that part of the 1928 crop, under the clause of the contract which reads:

"15. That the grower who fails or refuses to deliver his potatoes to the association in accordance with this contract shall pay to the association the sum of 25 cents for each one hundredweight of potatoes sold by him to or through parties other than the association as liquidated damages to compensate the association for its expenditures in providing and maintaining for him the machinery, equipment, personal service, and information necessary to market his crop."

Defendant raised several defenses and prevailed in circuit court, by direction of verdict, on the ground that the contract had never become effective because of non-fulfilment of the condition precedent above quoted.

Plaintiff had loading stations at Edmore, Wyman, and Cedar Lake. A canvass of the market area was made by several solicitors sent out by the Michigan Potato Growers Exchange, and the determination that the contract was effective was made by their chief on the basis of their reports. The method was to inquire of growers and to report their acreage as stated by them, a separate list being made of those who contracted and those who did not. When any grower stated he loaded at another station than above named, the solicitor went no farther in that direction and made no inquiry of others beyond him to ascertain their loading station. The determination of sufficient acreage to make the contract effective was made by computation from the lists so ob-

tained.  It was not shown that all the growers, even within the territory so ascertained, were approached, nor what the total acreage was.  There was much evidence to dispute both the limits of the area and the proportion of acreage contracted.

Obviously, this method did not determine the boundary of the "market area" in which the potatoes were "ordinarily hauled" to plaintiff's shipping points, within any fair construction of the contract, nor was the required acreage shown to have been signed up as a matter of fact.  The provision was a condition precedent.  The contract never took effect.  Plaintiff, of course, can have no advantage from the uncertainty of the term "market area," or the difficulty in ascertaining it, as the contract was its own form.  Nor was the proportion of acreage unimportant, as it bore upon the cost of sales and returns to the growers.

The more serious question is whether, by having operated under the contract, defendant waived the condition precedent or was estopped from denying that the contract was in force.  It is fundamental that waiver and estoppel rest upon knowledge of the facts.  There was no evidence that defendant had knowledge of the method of determining the market area, or the proportion of growers contracted, at any time before he made the last delivery to plaintiff.  There was no waiver or estoppel.  *Wenatchee District Co-Operative Ass'n* v. *Mohler,* 135 Wash. 169 (237 Pac. 300); *Northwest Hay Ass'n* v. *Chase,* 136 Wash. 160 (239 Pac. 1).

The contract provisions regarding the obligation to deliver potatoes and damages for nondelivery were made by-laws of the association in 1925, and it is now contended that plaintiff may recover under them.  They were not counted on in the declaration,

and, apparently, the point was not raised in circuit court. The contract provides "the grower is or agrees to become a member of the association." The evidence of the defendant's membership was his own statement, "I am a member; that is, I signed the contract that has been testified to." It was not shown that he exercised any rights of membership or had any membership aside from the marketing contract. The contract being inoperative, so was the membership, as far as this record discloses.

The court properly directed a verdict for defendant.

This is a test case, and it is urged that we determine whether the contract violated the anti-trust laws, although, concededly, the question is not here for review. We think the question should be left for a proper case, especially to one where the scope and effect of the operations of the plaintiff and the Michigan Potato Growers Exchange are more fully developed in the testimony.

Judgment is affirmed, with costs.

NORTH, C. J., and BUTZEL, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.