[No. 17592.  Department Two.  May 9, 1923.]

PIERCE COUNTY DAIRYMEN'S ASSOCIATION, *Respondent,*
v. A. R. TEMPLIN, *Appellant.*[1]

CORPORATIONS (175)—CONTRACTS—VALIDITY—TRANSACTING BUSINESS PRIOR TO SUBSCRIPTION TO STOCK. A member of an incorporated dairymen's association cannot avoid his contract with the company on the ground that, when the contract was made, three-fourths of its stock had not been subscribed and one-fourth paid in, as required by Rem. Comp. Stat., § 3921, where he entered into the contract after it had actively started in business, and continued to comply therewith for fourteen months without questioning the validity of the incorporation.

INJUNCTION (24)—CONTRACTS—RESTRAINING BREACH—DAMAGES AS ADEQUATE REMEDY. Injunction will lie to restrain the breach of a dairyman's contract to sell all his product to an association of which he was a member, notwithstanding a provision that, owing to the impossibility of estimating damages for the breach, the sum of $10 per cow is agreed upon as liquidated damages in advance in case of any breach of the contract.

CONTRACTS (45)—MONOPOLIES (3) — VALIDITY — RESTRAINT OF TRADE. A dairyman's contract to market all his product exclusively through an association of which he is a member is not void, as creating a monopoly in restraint of trade, where it had no such tendency and the purpose of the association was to effect the efficient and economical bringing together of the producer and consumer.

INJUNCTION (72)—DECREE—TERMS. An injunction restraining a dairyman from breaching a contract to market all his product produced in P. County, is too broad where it covers P. and "adjoining" counties not covered in the contract.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 21, 1921, in favor of the plaintiff, in an action for an injunction, tried to the court.  Modified.

*Ellis, Fletcher & Evans,* for appellant.

*A. O. Burmeister, W. G. Heinly,* and *M. J. Gordon,* for respondent.

[1] Reported in 215 Pac. 352.

PARKER, J.—The plaintiff association commenced this suit in the superior court for Pierce county, seeking an injunction restraining the defendant, Templin, a dairyman, from selling or marketing his milk through any other person or corporation than the association; he being under contract with the association to sell and market his milk through it as his exclusive agent therefor. A trial upon the merits resulted in the awarding of injunctive relief to the association against Templin as prayed for, from which he has appealed to this court.

The association became incorporated under the name of Pierce County Dairymen's Association, by the due execution and filing of its articles of incorporation in November, 1919, as a cooperative association under ch. 19, Laws of 1913, p. 50; §§ 3904-3923, Rem. Comp. Stat., relating to the incorporation of such associations. Templin, having subscribed for and become the owner of shares of stock in the association, and thereby a member of the association, became entitled to the services of the association in the marketing of his milk, in common with other dairymen stockholders, members of the association.

Sometime after the association had commenced active business, as contemplated in its organization, a contract was entered into between the association, and Templin, the same in form and stipulations as other contracts of the association entered into with its members, looking to the marketing of their milk through the association as their exclusive selling agent. That contract reads in part as follows:

"This agreement, made and entered into this 1st day of April, 1921, by and between Albert Templin, of the County of Pierce, State of Washington, hereinafter, for brevity, called the Dairyman, and Pierce County Dairymen's Association, a corporation organized and existing under and by virtue of the laws of the State

of Washington, with its principal place of business located at Tacoma, Washington, hereinafter called the Association, witnesseth:

"That the Dairyman, for and in consideration of the covenants and agreements herein contained, to be kept and performed by the Association, hereby nominates and appoints, and agrees to employ, the Association as his Exclusive Sales Agent for, and agrees to deliver to the Association, or its order, for sale on his account, all of the milk produced by the Dairyman, or for him, or in which he may have any interest, either as landlord, tenant or otherwise, during the continuance of this contract (except such amount as the Dairyman shall require for his own purposes), upon th— certain tract of land situated in the County of Pierce, State of Washington, more particularly described as follows: ——————————— for a period of three years from the date hereof, . . .

"It is understood by the Dairyman that the Association is composed of á large number of Dairymen in Pierce and adjoining Counties, Washington, all of whom have entered into, or shall hereafter enter into, a contract with the Association, identical with this contract, and that the purpose of the Association and of this Agreement, among others, is to maintain and increase to the greatest efficiency, the Association as a selling agent for its members; that to accomplish this purpose it is necessary that all of said Dairyman pool their said milk, so as to give the Association the largest possible selling power; that it may be desirable and expedient for the Association, from time to time, in order to secure for the Dairyman the largest possible net returns for his milk, to enter into contract or contracts to furnish certain persons, firms or corporations certain and definite quantities of milk at stated times covering stated periods during the continuance of such contract or contracts; that the Association can make such contract or contracts only upon the strength of and in reliance upon the strict and faithful fulfillment by the Dairyman of the terms of this contract, on his part to be fulfilled; therefore, as an inducement to the Association to undertake the performance of the ser-

vices contemplated by this contract, the Dairyman hereby stipulates and agrees that he will not sell or dispose of his said milk to or through any person, firm or corporation other than the Association, without the approval of the Association, during the life of this contract; and it is hereby mutually agreed, inasmuch as it is impossible, at this time, to fix and estimate the actual damage which will be sustained by the Association in the event that the Dairyman should fail to fulfill his agreement to sell his milk exclusively through the Association, that such damages are hereby estimated and agreed upon in advance as Ten Dollars ($10.00) per cow for each and every cow owned and milked by or for the Dairyman at the time the Dairyman shall be guilty of any breach of this contract, as the minimum fixed, determined and liquidated damages for said breach, and the amount, so agreed upon, shall, immediately upon said breach, be due and owing from the Dairyman to the Association, and may be deducted by the Association and retained from any moneys in its hands or which may come into its hands belonging to the Dairyman, or, at the option of the Association. said amount, or any part thereof, may be collected from the Dairyman by a suit at law."

Soon after the entering into of this contract, Templin, in pursuance of its terms, commenced furnishing milk to the association, and continued so to do until May 28, 1922, which, it will be noticed, covered a period of some fourteen months. Templin then ceased to furnish his milk to the association and refused to be bound by the terms of the contract, and thereafter sold and disposed of his milk to others; he continuing to be a dairyman and such a producer of milk in Pierce county.

It is first contended in behalf of Templin that the contract is not enforcible against him because the association, at the time of the making of the contract, did not have three-fourths of its capital stock subscribed for and did not have one-fourth of its capital stock paid in,

and therefore commenced business before it was authorized to do so, in violation of the provisions of § 18 of the Co-operative Associations' Act of 1913 (Laws of 1913, p. 55); § 3921, Rem. Comp. Stat., reading as follows:

"No co-operative association organized under the provisions of this act shall be permitted to do business until three-fourths of the capital stock shall have been subscribed for and one-fourth of the capital stock of said association shall have been paid in to said association."

The record does seem to show that, when the association commenced business as a corporation, and when this contract was entered into on April 1, 1921, it had not fully complied with these provisions of the statute. However, we think this is not a question which Templin can raise at this time. He entered into this contract as a member of the association, as a large number of others members had done, after he knew it had actively entered upon its business career, and he continued to comply with the terms of the contract, as we think the association also did, for a period of some fourteen months without in any manner challenging the validity of the contract because of want of power on the part of the association to enter into the contract. The prior decisions of this court seem conclusive against him in so far as this contention is concerned. *Carroll v. Pacific National Bank*, 19 Wash. 639, 54 Pac. 32; *Spokane v. Amsterdamsch Trustees Kantoor*, 22 Wash. 172, 60 Pac. 141; *American Radiator Co. v. Kinnear*, 56 Wash. 210, 105 Pac. 630; *Washington Co-operative Egg & Poultry Ass'n v. Taylor*, 122 Wash. 466, 210 Pac. 806. We also note in this connection that, while the record does not make it clear that three-fourths of the stock had been subscribed and one-fourth of the par value thereof paid in, before Templin ceased to furnish

milk to the association, facts are disclosed by the record which seem to render that probable.

It is next contended that the association is not entitled to the remedy of injunction as against Templin because of the damage stipulations found in the above quoted portions of the contract. This contention is, we think, fully answered by our decision in *Washington Cranberry Growers Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811. Indeed, it seems to us that this contract presents a somewhat clearer case permitting the association to seek a remedy by injunction than the contract involved in the cranberry case did. In that case the contract between the cranberry association and the grower was apparently not between the association and one of its members, as this is; and besides, a critical reading of the liquidated damage provisions of that contract, we think, will show that there was a more specific and certain agreement as to the amount of such liquidated damages than the language of this contract evidences. In that contract the damages were to be measured by the sum of "one dollar per box for each box of cranberries grown or sold by the grower," and not delivered to the association; while in this contract the damages are to be measured by "Ten Dollars ($10.00) per cow for each and every cow owned and milked by or for the Dairyman at the time the Dairyman shall be guilty of any breach of this contract." This seemingly is not a very clear or certain fixing of the amount of damages which may be recovered for a breach of this contract.

These questions might readily arise in a damage action: Shall the association be entitled to recover $10, once for all, when the dairyman ceases to furnish the milk from some one cow, and he thereafter be entirely freed from the obligations of the contract, so

far as the future production of the milk from that cow was concerned? Shall the association be entitled to recover $10 for the failure to furnish to the association the milk from that cow today, another $10 for such failure on tomorrow, and another for such failure on every day thereafter? Shall the association be entitled to recover $10 multiplied by the number of producing cows he has, for the failure to furnish the milk from some one of his cows? Other possible troublesome questions of this nature could be suggested. We are not deciding that there cannot be found in this contract some prescribed measure of damages applicable to all possible varying circumstances; but only suggesting the difficulties to be met with in an attempt so to do under varying circumstances, for the purpose of showing that there is even more reason here for permitting the association to resort to injunction as an alternative remedy than there was in the cranberry case. We conclude that the association was not, by the terms of this contract, precluded from seeking redress by injunction.

It is further contended on behalf of Templin that this contract should be held unenforcible as against him because of its tendency to create a monopoly in restraint of trade. Looking along to the provisions found in the articles of incorporation of the association, its by-laws and the stipulation of this contract, we do not think the contract has the tendency so claimed for it. This corporation having been formed as a co-operative association under statutory authority for the doing of the very things contemplated in its organization and by the execution of this contract, we think it would require strong, convincing considerations to call for the holding that this contract is so monopolistic in its character as to call for the holding

of it to be invalid for that reason. So far as we may concern ourselves with a question of fact as to whether or not it has had that tendency, we are quite clear that the evidence does not show that it has had such tendency. The trial judge made no specific finding on this question of fact, but evidently he was of this same opinion. We think the purposes of the association, as evidenced by its articles of incorporation, its by-laws and the making of these contracts, and what the association has in fact done, look to the efficient economical bringing of the producer and consumer of milk close together, and the avoiding of intervening profits to the loss of the producer, rather than to the unlawful controlling of the price of milk to the consumer. We conclude that there is no impediment to the enforcement of this contract because of its tendency to create a monopoly in restraint of trade.

In the body of the decree we find that Templin is restrained "from selling or disposing of any of the milk, or milk products of the cows owned or controlled by him or them, on land in Pierce *or adjoining counties,* to, or through any person, firm or corporation other than the plaintiff herein." We italicize the words to be noticed. This manifestly is erroneous in so far as it restrains Templin from disposing of, through others than the association, milk which may be produced outside of Pierce county; since, by the terms of the contract, no obligation rests upon him to the association with reference to any milk produced outside of Pierce county. The decree should be modified by striking therefrom the words "or adjoining" and substituting the word "county" for "counties." In all other respects the decree should be affirmed. It is so ordered, and the cause remanded to the superior court for Pierce

county with directions to correct its decree accordingly. Neither party will recover costs in this court.

MAIN, C. J., FULLERTON, TOLMAN, and PEMBERTON, JJ., concur.