[No. 18564.   Department One.   June 5, 1924.]

GRAYS HARBOR DAIRYMEN'S ASSOCIATION, *Respondent,* v.
ALBERT ENGEN *et al., Appellants.*[1]

INJUNCTION (24)—CONTRACTS—RESTRAINING BREACH—DAMAGES AS
ADEQUATE REMEDY.   A member of a dairymen's marketing associa-
tion, agreeing to sell all his product to the association until his con-
tract is terminated by a notice to be given at a specified time in the
year, will be restrained from violating the contract.

ASSOCIATIONS (2)—MEMBERSHIP—WITHDRAWAL—TERMINATION OF
CONTRACT—NOTICE.   The contract of a member in a dairyman's
marketing association which provides that it can be terminated in
any year only by giving notice thirty days before the first of Feb-
ruary, is not legally terminated by giving notice on January 26,
notwithstanding the by-laws provide that members may withdraw at
any time between the first day of January and the 1st day of Feb-
ruary in any year.

Appeal from a judgment of the superior court for
Grays Harbor county, Hewen, J., entered November
15, 1923, in favor of the plaintiff, in an action for an in-
junction, tried to the court.   Affirmed.

*F. L. Morgan,* for appellants.
*W. H. Abel,* for respondent.

HOLCOMB, J.—This is an equitable action to restrain
the breach of a contract.

Respondent is a corporation organized under the
laws of 1913, but which has adopted the provisions of
the Laws of 1921, p. 357, § 1 *et seq.* [Rem. Comp. Stat.,
§ 2878 *et seq.*], with reference to cooperative marketing
associations, and is engaged in the business of buying
and selling milk and dairy products in Grays Harbor
county.   Appellants are dairy farmers, having a small
herd near Montesano.

[1] Reported in 226 Pac. 496.

Respondent has a form of contract which it requires its members to sign. One of them was entered into by appellants, as is admitted in their answer, on June 2, 1922, the only qualification in their answer being that the contract was intended only for the year ensuing. The material parts of the contract, so far as necessary to notice, are these:

"1. In consideration of the outlays and expenses incurred and to be incurred by the Association in providing means for handling and marketing milk, and facilities for handling and storing the same, and the expense to which it has been, and will be put, for organizing and establishing markets for milk, and the compensation to be paid him therefor, the Producer hereby agrees as follows:

"He will produce and deliver all his marketable milk at such shipping stations in said state, in such quantities and conditions and at such times as the Association or its agent may direct, and he appoints said Association his agent for the purpose of handling, storing and marketing all milk not needed for his home consumption which shall be produced by him or for him, or in which he shall have any interest as landlord or tenant, upon the lands situate in the county of Grays Harbor, State of Washington, described as follows: About 2½ miles from Montesano by highway on part of J. Arland ranch. Or any other lands which he may occupy as tenant or owner during the year 1918 and every year thereafter continually; Provided, that the Producer may cancel this contract on the first day of February of any year, by giving written notice to the Association at least thirty days prior to said date that he desires to cancel his contract. If such notice be given, the Producer shall, prior to said first day of February, pay any indebtedness due from him to the Association and deliver his copy of this contract to the Association, and the same shall thereupon be cancelled and terminated. Such cancellation shall not affect any uncompleted sales or transactions between the parties hereto, nor release either from any indebtedness due the other."

There were then some further recitals as to the purpose of the agreement, as follows:

"5.    The Producer fully understands that the purpose of this agreement is to increase and maintain to its greatest efficiency the co-operative marketing agency known as the Grays Harbor Dairymen's Association, which said producer is or has the right to become a stockholder, and that to accomplish this purpose it is necessary that the Producer shall strictly and fully comply with and perform the stipulations of this agreement and that by so doing it is the purpose to bring about a staple market for his milk products at a fair price, and he therefore expressly agrees that he will not, during the continuance of this agreement, sell or otherwise dispose of his milk to any person or corporation for a consideration except through said Association.

"It is understood by the Producer that the Association is composed of a large number of Dairymen, all of whom have entered into, or shall hereafter enter into, a contract with the Association, identical with this contract, and that the purpose of the Association and of this Agreement, among others, is to maintain and increase to the greatest efficiency the Association as a selling agent for its members; that to accomplish this purpose it is necessary that all of said Producers pool their said milk, so as to give the Association the largest possible selling power; that it may be desirable and expedient for the Association, from time to time, in order to secure for the Producer the largest possible net returns for his milk, to enter into contract or contracts to furnish certain persons, firms or corporations certain and definite quantities of milk at stated times covering stated periods during the continuance of such contract or contracts; that the Association can make such contract or contracts only upon the strength of and in reliance upon the strict and faithful fulfillment by the Producer of the terms of this contract, on his part to be fulfilled; therefore, as an inducement to the Association to undertake the performance of the services contemplated by this contract, the Producer hereby stipulates and agrees that he will not sell or dispose of

his said milk to or through any person, firm or corporation other than the Association, without the approval of the Association, during the life of this contract; and that it is hereby mutually agreed, inasmuch as it is impossible, at this time, to fix and estimate the actual damage which will be sustained by the Association in the event that the Producer fail to fulfill his agreement to sell his milk exclusively through the Association, that such damages are hereby estimated and agreed upon in advance as five dollars ($5.00) per cow for each and every cow owned and milked by or for the Producer at the time the Producer shall be guilty of any breach of this contract, as the minimum fixed, determined and liquidated damages for said breach, and the amount, so agreed upon, shall, immediately upon said breach, be due and owing from the Producer to the Association and may be deducted by the Association, and retained from any moneys in its hands or which may come into its hands belonging to the Producer, or, at the option of the Association, any such claim shall be a lien upon the member's note.''

The provisions of the constitution and by-laws of the association are also introduced, which provide how membership in the association may be obtained, and that parties may withdraw from the association ''at any time between the first day of January and the first day of the following February.''

On January 31, 1923, as shown on the face of the document, but on January 26, 1923, as testified by one of the appellants, they gave their written notice of withdrawal, as follows:

''Grays Harbor Dairymen's Association:
We hereby send this notice that we wish to cancel our contract that we have with the Association about the first of March.  Very truly,
''(Signed)   Engen & Canfield.''

Notwithstanding the above notice, however, appellants continued to furnish milk to respondent until about the middle of July, 1923.

Upon the trial of the case, appellants introduced in evidence as exhibits the constitution and by-laws of the association and the notice in writing above set out. At the conclusion of respondent's case, appellants moved for nonsuit, which was denied.

The final decree granting an injunction provides that it is to "remain in force and effect until the contract has been terminated by the defendants giving to the plaintiff notice at least thirty days prior to the first day of February of any year, in which event the injunction shall terminate upon the first day of February next following the giving of such notice for thirty days, a copy of which notice may be filed by defendants in this case at defendant's option."

Appellants vigorously contend that there was no evidence justifying the court in issuing a permanent injunction in this case, no proof of any injury or threatened injury in the slightest degree to respondent, and that, in any event, the proof affirmatively shows that appellants withdrew from the association and had faithfully performed all the duties and obligations under the contract at the time the proceeding was brought.

Appellants lose sight of the recitals contained in the contract, which are not denied. While these recitals are mere recitals of fact, they are *prima facie* true unless denied and facts to the contrary shown. We have set these recitals out in quoting the fifth paragraph of the contract. It is unnecessary to analyze them in detail.

While the author of this is not in accord with the decisions of this court and the precedents established by the cases of *Washington Cranberry Growers Association v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077, and *Pierce County Dairymen's Association v. Templin,* 124 Wash. 567, 215 Pac. 352,

nevertheless they have announced and reiterated the law governing such a proposition as this by a large majority of this court. They have become the established law. Furthermore the legislature has legalized such remedy as to co-operative associations thereafter organized, although that act would not apply here. Laws of 1921, ch. 115, p. 365, § 15 [Rem. Comp. Stat. § 2892]. The contract in this case is somewhat more compelling and comprehensive in certain particulars than the one in the *Pierce County Dairymen's Association* case, *supra,* and it was held upon the facts shown in that case that the threatened breach of contract should be restrained, and respondent was not compelled to have recourse only to damages as stipulated in the contract. The same principle was announced in the *Washington Cranberry Growers Association* case, *supra.* There is no escape from the precedents established by these cases, and the first contention made by appellants cannot be sustained.

Nor can the second contention be sustained. The contract entered into by the parties hereto provided that it could be terminated only by giving notice for at least thirty days prior to the first day of February of any year, and this was not done, according to the testimony. Moreover, they continued delivering milk after March 1 until July 12. The written notice sent by appellants fell far short of the required notice. Appellants contend, however, that the by-laws alter that provision of the contract and provide, as set out herein, that any member might withdraw from the association at any time between the first day of January and the first day of February following; but there is nothing in that provision that can be said to alter the provisions of the contract that at least thirty days' notice prior to the first day of February should be given the association if a member desired to cancel his contract.

Wherefore, there can be no question but that appellants put their necks within the halter, and there is no escape, under our cases heretofore cited.

The decree is affirmed.

TOLMAN and MACKINTOSH, JJ., concur.

PARKER, J. (concurring)—I concur in this opinion, except its expressions doubting the correctness of our former decisions on this subject.

MAIN, C. J., concurs with PARKER, J.