Clear Lake Co-operative Live Stock Shippers' Association, Appellee, v. J. M. Weir, Appellant.

STATUTES: Subjects and Titles of Acts—Co-operative Selling Agencies. An act "to provide for the organization of associations without capital stock and not for pecuniary profit" is broad enough to justify the inclusion of a provision (1) authorizing a co-operative selling association to require its members to sell all or a stipulated part of their products through the association, (2) providing for the form of the contract in such cases, and (3) empowering the association to provide for and collect liquidated damages for a violation of such contract. (See Book of Anno., Vol. 1, Const., Art. III, Sec. 29.)

CONSTITUTIONAL LAW: Class Legislation—Co-operative Selling Associations. The provision of the Non-profit-sharing Co-operative Agricultural Act (Ch. 390, Code of 1924) (1) authorizing an association organized thereunder to require its members to sell all or a stipulated part of their produce through the association, (2) providing the form of the contract in such cases, and (3) empowering the collection of liquidated damages for a violation of the contract, is not violative of Art. I, Sec. 6, of the Constitution, no element of arbitrary or unreasonable classification or discrimination being discernible therein.

STATUTES. Repeal—Implied Repeal Because of Repugnancy. It may not be successfully contended that a statute is invalid because repugnant to a prior and existing statute, since, as between repugnant statutes, the later in enactment must prevail. So held as to an alleged repugnancy between Ch. 390 and Sec. 9915, Code of 1924. (See Book of Anno., Vol. 1, Sec. 63, Anno. 11-a1, 33 *et seq.*)

ACTIONS: Nature and Form—Cumulative and Exclusive Remedy. A contract provision to the effect that, if damages accrue to one party,

he may apply to the payment thereof any money in his hands belonging to the other party, is permissive only, and additional to the usual remedy by action in court.

**DAMAGES:** Liquidated Damages—Contract—Sufficiency. A contract for liquidated damages under the Non-profit-sharing Co-operative Association Act (Ch. 390, Code of 1924) is sufficient if the contract provides for such damages and the by-laws of the association provide the schedule therefor.

**Headnote 1:** 36 Cyc. p. 1048. **Headnote 2:** 36 Cyc. p. 992. **Headnote 3:** 36 Cyc. p. 1073. **Headnote 4:** 13 C. J. p. 696. **Headnote 5:** 17 C. J. p. 932 (Anno.)

*Appeal from Cerro Gordo District Court.*—JOSEPH J. CLARK, Judge.

DECEMBER 15, 1925.

THE opinion states the case.—*Affirmed.*

*Ira W. Jones,* for appellant.

*Bryant & Wolf,* for appellee.

STEVENS, J.—The plaintiff, appellee herein, is a corporation organized in pursuance of Chapter 122, Acts of the Thirty-ninth General Assembly (Chapter 390, Code of 1924), having its principal place of business at Clear Lake, Iowa. It

1. STATUTES: subjects and titles of acts: co-operative selling agencies.

alleged in its petition, which is in two counts, that appellant, on or about October 16, 1922, signed a membership agreement with said corporation, Paragraph 6 of which is as follows:

" (6) It is further expressly agreed, in consideration of the undertakings of the association and other similar agreements entered by members thereof and in view of the difficulty of ascertainment of damages caused by breach of this agreement that in the event of the member failing to list and deliver his stock as provided herein, he shall pay to the association such sum or sums as may be provided by the by-laws for each hundred weight of live stock which he fails to list and deliver which shall be considered as liquidated damages, and the manager is hereby

authorized to deduct such damages from any moneys then or thereafter in his hands belonging to the member."

It is further alleged that he has breached this provision of the contract by selling 4 veal calves of the aggregate weight of 600 pounds and 19 head of hogs of the aggregate weight of 6,810 pounds to persons unknown to the plaintiff, and damages are asked on the basis of 25 cents per hundred pounds of the stock sold, or a total of $18.52.

Section 2, Article 3, of the by-laws of the association, which are also incorporated in the petition, is as follows:

"In case of failure on the part of any member to fulfill the terms of his contract with the association and to list and deliver his stock as provided in his contract he shall pay as liquidated damages and in consideration of the difficulty of ascertainment of the precise damages suffered by the association, and the individual members thereof who shall have entered into similar undertakings, and of such like agreements, the sum of twenty-five cents (25c) per hundred pounds of live stock which he so fails to list and deliver, which amount may be deducted from any sum or sums in the possession of the association, belonging to such member."

Appellant demurred to the petition upon numerous grounds, among which is that Section 11 of Chapter 122, Acts of the Thirty-ninth General Assembly, violates Section 29 of Article III and Section 6 of Article I of the Constitution of the state of Iowa, and is therefore void. Section 11 of Chapter 122 is as follows:

"The association may require members to sell all or a stipulated part of their specifically enumerated products exclusively through the association or to buy specifically enumerated supplies exclusively through the association, but in such case, a reasonable period during each year shall be specified during which any member, by giving notice in prescribed form, may be released from such obligation thereafter. (Where it is desired to enter into the exclusive arrangement provided in this section, the association shall execute a contract with each such member setting forth what goods or wares are to be handled and upon what terms). In order to protect itself in the necessary outlay, which it may make for the maintenance of its

services, the association may stipulate that some regular charge shall be paid by the member for each unit of goods covered by such contract whether actually handled by the association or not, and in order to reimburse the association for any loss or damage which it or its members may sustain through the member's failure to deliver his products to or to procure his supplies from the association. In case it is difficult or impracticable to determine the actual amount of damage suffered by the association or its members through such failure to comply with the terms of such a contract, the association and the member may agree upon a sum to be paid as liquidated damages for the breach of his contract, said amount to be stated in the contract."

The demurrer was overruled, and the defendant appeals. The amount involved being less than $100, the cause comes to this court on the certificate of the trial judge.

I. Section 29, Article III, of the Constitution requires that:

"Every act [of the legislature] shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

The title of Chapter 122, Acts of the Thirty-ninth General Assembly, reads as follows:

"An act to provide for the organization of associations without capital stock and not for pecuniary profit."

Section 1 of the act defines its purpose, and is as follows:

"Any number of persons, not less than five (5), may associate themselves as a co-operative association, without capital stock, for the purpose of conducting any agricultural, live-stock, horticultural, dairy, mercantile, mining, manufacturing or mechanical business on the co-operative plan and of acting as a co-operative selling agency for its members."

The remainder of the act provides for the adoption of articles of incorporation and for the filing thereof with the secretary of state, fixes the fees to be paid, which are nominal, and provides for the election of a board of directors, a president, one or more vice presidents, a secretary and treasurer, and for membership, annual reports, etc.

The point raised by the demurrer is that the title is not

broad enough to include the provisions of this section. It is conceded that the title is sufficient to include all of the other provisions of the act; or at least the constitutionality of the act as a whole is not challenged. Section 9 declares who may become members of non-profit-sharing co-operative associations organized under the act, which includes all "persons engaged in the production of the products, or in the use or consumption of the supplies, to be handled by or through the association, including the lessors and landlords of lands used for the production of such products, who receive as rent part of the crop raised on the leased premises."

Appellee association was organized for the sole purpose of marketing farm products. The membership contract excepts from its operation live stock butchered on the farm or sold to local butchers or other private customers, stocker or feeder animals sold locally, and pure-bred or other animals sold for breeding purposes. The purpose, therefore, of the association is to sell the products of its members upon foreign markets. The evident purpose of Section 11 of the act is to secure greater certainty and efficiency to the corporation as a selling agency. It is a part of the scheme or plan devised by the legislature for greater economy in the marketing of farm products. Whether Section 11 was necessary to the successful working out of the plan, or prudent, is of no consequence in determining its constitutionality. It is not necessary that the title shall contain a detailed recital of all of the provisions of the act, nor is it required to be an index or an epitome thereof. All of the provisions thereof must relate to the act as a whole, without incongruity or want of unity. The legislature may well have deemed the provisions of Section 11 vital to the integrity and security of selling agencies organized under this chapter. We think it clearly harmonizes with the other provisions of the act, and is in no sense foreign or extraneous thereto. It is a part of the scheme created for organizing co-operative selling agencies. Questions involving the sufficiency of titles to legislative enactments have frequently been before this court, and the rules for determining the sufficiency thereof are too familiar to require repetition or elaboration. The discussion in the following cases will be found ample, and fully sustains the validity of the stat-

ute in question: *State v. Gibson,* 189 Iowa 1212; *Huston v. City of Des Moines,* 176 Iowa 455; *State v. Hill,* 177 Iowa 270; *Schultz v. Parker,* 158 Iowa 42; *State v. Hutchinson Ice Cream Co.,* 168 Iowa 1; *Camaras v. City of Sioux City,* 192 Iowa 372.

II.   Section 6, Article I, of the Constitution of this state requires that:

"All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens."

It is urged by counsel that Section 11, Chapter 122, Acts of the Thirty-ninth General Assembly, quoted above, also violates this provision of the Constitution.   It is not clear, in the light of the repeated decisions of this court, just in what sense this can be true.   This section of the Constitution does not prohibit the legislature from establishing classifications and legislation with particular reference thereto and for the benefit thereof.   The limitation imposed by the Constitution is that the classification established must be based upon some natural reason or upon one suggested by necessity, determined by the difference in the situation and the circumstances of the subjects placed in different classes: that is, the distinction must be based upon something substantial, and must not be arbitrary, unreasonable, or such as to produce unavoidable discrimination. Legislation of this character must also extend to and embrace equally all persons who are or may be in like situation or circumstance.   *Hubbell v. Higgins,* 148 Iowa 36; *State v. Fairmont Creamery Co.,* 153 Iowa 702; *Sisson v. Board of Supervisors,* 128 Iowa 442; *State v. Garbroski,* 111 Iowa 496; *Eckerson v. City of Des Moines,* 137 Iowa 452.

Agriculture, of which stock-raising is a part, is a basic industry in this state, as well as in a large part of the nation, north and south.   A much larger proportion of the people of this state are engaged in agriculture than in any other industry or business.   There is no industry to be found anywhere in which classifications based thereon are more natural, obvious, and exclusive than in agriculture.   It is as distinct in its character as mining, manufacturing, banking, or any other branch

or division into which society is economically divided.  The act in question makes no discrimination between the individuals of this class.  Any five persons engaged in agriculture may organize a co-operative non-profit-sharing corporation under the provisions thereof, for the purpose of marketing the products of its members.  No one engaged in agriculture is excluded from its benefits, and all may become members of associations organized under the act.  Appellee is not a purchasing agency, and its functions are limited to the selling of certain of the farm products of its members on foreign markets.  The statute denies to no one engaged in agricultural pursuits any right or privilege conferred upon others similarly situated and engaged.  There is, therefore, no discrimination or curtailment of the rights of a single member of the class for the benefit of which it was enacted.  Many states have adopted similar enactments, and, so far as they have been passed upon by the courts thereof, they have been uniformly sustained.  *Hollingsworth v. Texas Hay Assn.* (Tex. Civ. App.), 246 S. W. 1068; *Anaheim Citrus Fruit Assn. v. Yeoman,* 51 Cal. App. 759 (197 Pac. 959); *Tobacco Growers Co-op. Assn. v. Jones,* 185 N. C. 265 (117 S. E. 174); *Kansas Wheat Growers Assn. v. Schulte,* 113 Kan. 672 (216 Pac. 311); *Pierce County Dairymen's Assn. v. Templin,* 124 Wash. 567 (215 Pac. 352); *Oregon Growers Co-op. Assn. v. Lentz,* 107 Ore. 561 (212 Pac. 811); *Ex Parte Baldwin County Prod. Corp.,* 203 Ala. 345 (83 So. 69); *Brown v. Staple Cotton Co-op. Assn.,* 132 Miss. 859 (96 So. 849); *Dark Tobacco Growers Co-op. Assn. v. Mason,* 150 Tenn. 228 (263 S. W. 60); *Northern Wisconsin Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571 (197 N. W. 936); *Texas Farm Bur. Cotton Assn. v. Stovall,* 113 Tex. 273 (253 S. W. 1101); *Potter v. Dark Tobacco Growers Co-op. Assn.,* 201 Ky. 441 (257 S. W. 33).  In a number of the above cited cases provisions almost identical with Section 11 have been sustained.

The suggestion of counsel is that the power conferred upon associations organized under Chapter 122 to make contracts is withheld from individual or voluntary co-operative, unincorporated associations engaged in the same line of industry, and that, therefore, its provisions are discriminatory and arbitrary and not based upon an obvious or natural classification of in-

dustry. The contention overlooks the purpose of the act. Its design was to secure unity and co-operation among all producers of live stock, in order that greater efficiency might be secured in selling live stock on foreign markets. It is true that the association represents its members only; but, so long as all producers may secure membership upon the terms and conditions provided by the by-laws of the association, the act is in no sense discriminatory. Any five persons coming within the classification may form an association under the act, thereby granting the statute uniformity in its operation. Individuals and unincorporated voluntary associations may make contracts for the purchase of live stock, and may recover actual damages, if any are suffered, for the violation thereof. The provisions of the contract in question assume the impracticability of applying any certain or definite measure of damages to the breach thereof. The association, as stated, is not a purchasing agency. It pays nothing for the live stock handled, and can have no profits. It is strictly a selling agency. It must incur expenses, and is, no doubt, subject to some emergencies. Section 11 does not, in our opinion, violate either of the constitutional provisions referred to.

III. The demurrer also challenges the validity of Section 11 of the act in question upon the ground that it violates Section 5067-a, Code Supplement, 1913 (Section 9915, Code of 1924). This section prohibits combinations, pools, and trusts, price-fixing and interference with any form of competition in the buying or selling of any commodity or article of commerce. The thought of counsel is that Section 11 promotes monopolistic agreements, price-fixing, and the elimination of competition, and for these reasons is contrary to Section 9915, as well as to public policy. The contention of counsel may be answered in two ways. In the first place, Chapter 122 was enacted subsequent to Section 9915, supra. The act contains no repealing clause, and, if Section 9915 is modified or any part thereof repealed thereby, it is by implication only. If the later act is repugnant to the prior statute, and the two are wholly irreconcilable, then the prior must, in the particulars involved, yield to the later statute. Chapter 122 is as much a declaration of public policy as Sec-

3. STATUTES: repeal: implied repeal because of repugnancy.

tion 9915. One has no greater sanctity in this regard than the other. *Dickey v. Jackson,* 181 Iowa 1155.

It is a well established rule of statutory construction that the last enactment of the legislature upon a given subject must prevail, and a former enactment to which it is repugnant will be deemed to have been repealed by implication. *State v. Brandt,* 41 Iowa 593; *State v. Shaw,* 28 Iowa 67; *State v. Courtney,* 73 Iowa 619; *Casey v. Harned,* 5 Iowa 1; *Serrin v. Grefe,* 67 Iowa 196; *McKinney v. Wood,* 35 Iowa 167. The right of the legislature to enact legislation for the incorporation of non-profit-sharing co-operative associations is not questioned. Perhaps the legislature, taking cognizance of altered conditions in farming and other industries, believed that a change of public policy should be adopted.

In the next place, a mere selling agency is not, *per se,* a monopoly. *Reeves v. Decorah Farmer's Co-op. Soc.,* 160 Iowa 194. Whether the act in question is repugnant to Section 9915, and by implication repeals the same to the extent necessary to give validity thereto, or whether Chapter 122 deals with another subject, and is not in conflict with the earlier statute, is alike immaterial. The result must be the same in either case: that is, the applicable statute will be followed. We therefore find it unnecessary to pass upon these questions. It is sufficient for present purposes to say that the contract in question and the by-laws of the association are in strict harmony with the specific provisions of Chapter 122. This being true, effect must be given to the act according to its terms.

If the decisions of this court in *Reeves v. Decorah Farmer's Co-op. Soc.,* supra, and *Ludowese v. Farmers' Mut. Co-op. Co.,* 164 Iowa 197, are in any way in apparent conflict with the conclusion herein reached, it must be remembered that they were both decided prior to the enactment of Chapter 122, Acts of the Thirty-ninth General Assembly, and involved almost wholly dissimilar facts. The conclusion reached in each of the above cases is based upon the statute, or upon common-law principles, and not upon constitutional grounds.

IV. It will be observed that Paragraph 6 of the contract between appellee and appellant authorizes the manager of the former to deduct such damages as it may have suffered by the

4. ACTIONS: nature and form: cumulative and exclusive remedy.

breach of the contract from any moneys then or thereafter in his hands belonging to appellant. It is now urged that this provision of the contract provides an exclusive remedy, and that no action to recover damages can be maintained by the association. The contention is, we think, without substantial merit. The provision has nothing to do with the prosecution of an action for damages. It does nothing more, in terms and effect, than to authorize the manager to retain out of funds in his hands belonging to the member a sufficient amount to pay damages due it. It is permissive in character, and clearly additional to the usual remedies provided by law. It has been repeatedly held by this court that, in order to make the remedy exclusive, the intention to do so must clearly appear. *Hefner v. Haynes,* 89 Iowa 616; *Hallowell v. McLaughlin Bros.,* 136 Iowa 279; *Love & Co. v. Ross, Crawford & Graham,* 89 Iowa 400. No such intention is to be found in the statute.

V. A further point made by the demurrer is that, as the amount to be recovered as liquidated damages is not stated in the contract, as required by Section 11, no cause of action to

5. DAMAGES: liquidated damages: contract: sufficiency.

recover liquidated damages is shown. We have heretofore set out the provisions of Section 11 and of the material portion of the by-laws of the association. It will be observed that the by-laws provide the basis for computing liquidated damages, and the contract, by reference, is based thereon. This is sufficiently specific to comply with the statute.

We have not discussed all of the matters covered by the argument of counsel, nor is it necessary to do so. It is proper, however, in this connection to say that the labor of the court in this case has been greatly lightened by the citation of ample, pertinent authorities on each point argued by counsel on both sides.

Since we find no reversible error in the record, the judgment of the court below is affirmed.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.