[No. 28130. *En Banc.* March 21, 1941.]

A. E. BEAULAURIER *et al., Appellants,* v. WASHINGTON STATE HOP PRODUCERS, INC., *Respondent and Cross-appellant.*[1]

[1]Reported in 111 P. (2d) 559.

80

*H. A. LaBerge* and *Charles R. Lyon,* for appellants.

*Cheney & Hutcheson,* for respondent and cross-appellant.

SIMPSON, J.—This is an action in equity to cancel and rescind marketing contracts entered into between plaintiffs and defendant.

The first amended complaint, upon which the trial was had, based a plea for recovery upon three causes of action. In the first cause of action, plaintiffs alleged that they were members of defendant co-operative corporation and that defendant refused to allow them to withdraw therefrom in accordance with the provisions of a by-law which allowed members so to do by serving a notice of withdrawal upon the giving of ten days' notice and paying sums due the corporation. The second cause of action alleged fraud in the securing of plaintiffs' membership and marketing contracts. In the third cause of action, plaintiffs alleged a breach of their marketing contracts in that the defendant allowed eleven members to cancel and rescind their contracts with the corporation.

In its answer, defendant denied the allegations contained in the complaint, save and except those general allegations relating to its corporate capacity and the facts regarding plaintiffs' membership in the corporation. For a further answer and cross-complaint, defendant alleged that plaintiffs had not complied with their contracts relative to the delivery of hops as required by the marketing agreements provided for in those contracts. Defendant prayed for a decree requiring a compliance with the terms of the contracts and for an attorney's fee in the sum of one thousand five hundred dollars. The reply put in issue the allegations of defendant's answer and cross-complaint. The cause, tried to the court, resulted in a judgment for defendant. Plaintiffs and defendant have appealed.

The court found that appellant A. E. Beaulaurier's contract had been obtained by fraudulent means in that, before and at the time he signed the marketing agreement, it was represented to him that unless seventy-five per cent of the hop growers signed marketing

agreements the corporation would not be formed. The court found:

"That said plaintiff Beaulaurier was one of the persons who signed the petition to amend the by-laws, Exhibit No. 3. On January 16, 1939, the defendant received by mail a notice signed by said plaintiff Beaulaurier in purported compliance with said proposed amendment to said by-laws in which said Beaulaurier gave notice of his withdrawal from membership in defendant co-op. That said Beaulaurier, as a member of said co-op, in December, 1938, signed and executed said Exhibit 3 for the purpose of exercising his rights as a member of the co-operative to change its by-laws, and thereafter he gave notice to said co-op in purported compliance therewith as to his withdrawal from said membership. That by signing said Exhibit No. 3 and by giving notice of withdrawal thereunder said Beaulaurier affirmed his membership contract with the defendant and thereby waived the fraud that had been practiced upon him, which fraud must have been known to him prior to the latter part of December, 1938, at which time he signed said Exhibit 3. Said Beaulaurier never gave any declaration of rescission of his marketing agreement or membership contract until the commencement of this action in April, 1939."

From the facts to which we have just referred, the court concluded that appellant A. E. Beaulaurier had

". . . fully waived any and all fraud and misrepresentation committed upon him by the defendant or any of its solicitors or representatives, and prior to the commencement of this action affirmed his membership contract and his marketing contract with the defendant."

No fraud was found to have been perpetrated upon the other appellants herein.

In its judgment, the court dismissed appellants' complaint, and then provided that appellants should forthwith deliver to respondent their hops produced during the year 1939, and that, in addition, A. E. Beau-

laurier and wife should deliver twenty-one bales of hops grown in the year 1938. A further provision of the decree restrained appellants from selling any of their 1939 crop to other than respondent, and then gave judgment against plaintiffs for the sum of five hundred dollars as attorney's fees.

Appellants' assignments of error are that the court erred: (1) In holding that the plaintiff A. E. Beaulaurier had waived fraud practiced upon him and was estopped from asserting such fraud; (2) in entering a mandatory injunction requiring appellants to forthwith deliver their hops to defendant; (3) in dismissing appellants' amended complaint; (4) in entering a judgment of specific performance requiring appellants to deliver the hops produced by them in 1938 and 1939; and (5) in granting respondent a judgment against appellants in the sum of five hundred dollars as attorney's fees.

The facts are as follows: Respondent, a hop marketing co-operative corporation, was organized by the filing of articles of incorporation December 2, 1937. Shortly thereafter, appellants, in company with one hundred other hop growers, became members thereof by signing marketing contracts. The contracts provided that, for a period of ten years, the members would deliver to, and market and sell their yearly crop of hops through, the respondent association under conditions and terms contained in the marketing contracts entered into between the members and the co-operative corporation.

Appellants refused to deliver to respondent the crops grown during the year 1939, and, in addition, appellants Beaulaurier refused to deliver twenty-one bales of their 1938 crop.

It is proper to note, before discussing other issues, that the allegations contained in appellants' first cause

of action cannot receive support, because of the fact that the by-law to which appellants refer was never approved by a sufficient number of the members of respondent co-operative.

Appellants press upon us error of the trial court in holding that appellant A. E. Beaulaurier had waived the fraud which the court found had been practiced upon him by representatives of respondent corporation.

Appellant Beaulaurier contends that he was induced to sign the marketing contracts because of the false representations that the corporation would not be formed unless seventy-five per cent of the hop growers of Washington, Oregon, and California would become members of the co-operative organization formed for the purpose of marketing hops.

We will assume, without deciding, that appellant A. E. Beaulaurier was induced to sign the marketing agreement by fraudulent representation. It then remains to be decided whether appellants waived that fraud.

In December, 1938, appellants signed a petition, as shown by exhibit No. 3, to amend the by-laws in the following manner:

"Any member may withdraw in any year, beginning with the year 1939, by giving ten days written notice to the Board of Trustees of said Company, any time prior to the 15th day of January of such year, beginning with January 15th, 1939. That upon the expiration of the ten days from the delivery of said notice in person or by registered U. S. Mail, and the payment of said withdrawing grower to said Company of all sums due and owing from said member to it, confining said payment on account of notes of the grower to the Company only, the membership of such member so withdrawing shall cease and all marketing contracts signed by said grower so withdrawing be cancelled and returned to him, and all hops of said grower

in any pool remaining unsold are automatically released to the grower."

Appellants took part in the meeting at which the amendment was proposed, and, although the proposed amendment failed to pass, appellant Beaulaurier, January 14, 1939, notified respondent by letter that he withdrew as a member of the respondent corporation in conformity with the provisions of the by-law filed with the company in December, 1938.

Counsel for appellants contend that respondent cannot take advantage of the waiver and estoppel for the reason that it was not pleaded by respondent.

■ It is the rule that estoppel and waiver are affirmative defenses and must be pleaded. *Walker v. Baxter,* 6 Wash. 244, 33 Pac. 426; *Olson v. Springer,* 60 Wash. 77, 110 Pac. 807; *Johns v. Clother,* 78 Wash. 602, 139 Pac. 755; *Russell v. Mutual Lumber Co.,* 134 Wash. 508, 236 Pac. 96; *Shafer Bros. Land Co. v. Universal Pictures Corp.,* 188 Wash. 33, 61 P. (2d) 593.

■ In this case, evidence relative to acts which the court found constituted the waiver of fraud was presented without objection on the part of appellants. In such cases, we have held that the pleadings should be treated as amended to conform to the evidence, and that the court will consider the question of waiver and estoppel if there is evidence showing such fact. *Hubbard v. Hartford Fire Ins. Co.,* 135 Wash. 558, 238 Pac. 569, 240 Pac. 565; *Johnson v. Grays Harbor R. & Light Co.,* 142 Wash. 520, 253 Pac. 819; *Godefroy v. Reilly,* 146 Wash. 257, 262 Pac. 639; *Thurber v. Clark,* 154 Wash. 485, 282 Pac. 911; *Du Pont Cellophane Co. v. Kinney,* 181 Wash. 140, 42 P. (2d) 441; *Anderson v. Anderson,* 199 Wash. 696, 93 P. (2d) 290.

The court properly considered the evidence relative to waiver and estoppel.

■ It is apparent that appellant Beaulaurier, with full knowledge of the facts which he considers fraudulent, deliberately aligned himself with other members and, acting as a member and the holder of a contract, took advantage of his membership and sought to amend the company's by-laws so that he could withdraw. He sought withdrawal, not upon the ground of fraud and overreaching, but upon the ground that he and others had a right to first amend the by-laws and then rescind their contracts in accordance with the terms of the proposed new law which he had sought to bring into being. Clearly, by such acts he waived any false representations which had been made and cannot now complain. *Kansas Wheat Growers Ass'n v. Oden,* 124 Kan. 179, 257 Pac. 975.

■ Appellants' argument to the effect that there was no intent shown here to waive any rights must fail, since the intent to waive may be implied from acts which are inconsistent with an intention to retain one's rights.

"Intention need not necessarily be proved by expressed declarations; it may be shown by acts and conduct, from which an intention to waive may reasonably be inferred, as well as by words or declarations—oral or written expressions; it may be inferred from circumstances. Intention may be proved by the existence of acts or language so inconsistent with the purpose of the person charged with waiver to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary." 67 C. J. 309, § 10.

Waiver by conduct has been recognized by this court many times, the following being typical instances of the application of that principle: *Buck v. Equitable Life Assurance Society,* 96 Wash. 683, 165 Pac. 878; *Yours Truly Biscuit Co. v. Lilly Co.,* 142 Wash. 513, 253 Pac. 817; *Reynolds v. Travelers Ins. Co.,* 176 Wash. 36, 28 P. (2d) 310.

We are in accord with the holding of the trial court that the appellant, by his actions in taking part in the meetings of the corporation, waived his right to raise the question of fraud.

All of the appellants contend that respondent breached its contract with them when it allowed eleven members to withdraw from membership and to rescind their marketing contracts. The releases in question were made without the consent of the membership of the corporation, and a question was raised as to their validity in the case of *Washington State Hop Producers v. Eglin,* 6 Wn. (2d) 585, 108 P. (2d) 329. In that case, we held that the release was binding on the association, even though it was not done with the consent of all of its members. We pointed out the fact that the releases were made because of threatened suits in most of the cases, and that compromises were effected with the released members whereby the association received a considerable amount of money. It was shown that the association had benefited by the compromise settlements, and that it had been to the advantage of the association to release these persons.

Appellants in the case at bar, however, insist that, even though the releases were valid and binding on the association, they constituted a breach of the contracts between the association and appellants. They cite the case of *Cotton Co-op. Ass'n v. Borodofsky,* 143 Miss. 558, 108 So. 802, in support of their contention. That case held that, when the directors released certain members of a co-operative marketing association from their obligation to deliver their crops to the association, another member was also released thereby, and an equitable bill brought by the association against the nonconsenting member must fail. However, we do not regard that case as authority in favor of appellants in the case at bar. The language of the court in that case

included the following sentence, after a declaration of the rule just mentioned:

"Any other view would be unreasonable, *there being no compensation or benefit to the association.*" (Italics ours.)

The qualification set forth clearly is applicable to the instant case, since, as we have already indicated, the association did receive compensation and benefit as a result of the releases, as distinguished from the factual situation in the *Borodofsky* case, *supra.*

We do not regard the qualification suggested by the Mississippi court as a complete treatment of the problem here presented. Though there may have been compensation and benefit to the association, so as to make the release binding as to it, there is present the argument that the releases might well constitute a breach of the contract between the association and the non-consenting members, if it can be shown that the release altered the contract into which they entered and that they suffered as a result of the alteration. Although our search of the authorities failed to reveal any other case in which this problem has arisen with reference to associations of this type, we have encountered some cases in which subscribers to corporate stock have been released without the consent of some of the other subscribers. *Rutz v. Esler & Ropiequet Mfg. Co.,* 3 Ill. App. 83; *McCully v. Pittsburgh & C. R. Co.,* 32 Pa. St. 25.

In those cases, the holdings were to the effect that the subscription agreements were not only with the company, but with the other subscribers, and they afforded mutual considerations for each other. It was held that to release some of them and hold the others would be to enforce contracts they never made. Up to that point, the principles enunciated would seem to mitigate against respondent's position, since the situation here presented is closely analogous to the stock

subscription cases. However, we note that in those cases there is added the qualification that no person should be able to rescind or be released from his subscription because of the release of others if he assented to these releases, expressly or impliedly. We hold that appellants in the case at bar did impliedly consent to the releases in question, and that they are therefore precluded from basing their right to rescind their contracts upon those releases. The evidence in the case was to the effect that appellants knew of the releases for a considerable period of time after they took place, and also showed that all of appellants participated as members in the association's affairs thereafter. By so acting, appellants impliedly approved the actions of the directors in granting the releases. We therefore find no merit in appellants' third cause of action.

Appellants urge error on the part of the trial court in issuing a mandatory injunction which compelled appellants to deliver to respondent all of their 1939 crop, and, in addition, compelled A. E. Beaulaurier and wife to deliver twenty-one bales of their 1938 crop. Appellants' argument is predicated upon the assumption that respondent had breached its contract with them, and they invoke the rule that one who is himself in default upon a contract may not secure equitable enforcement thereof against the other party, on the basis of the "clean hands" doctrine. However, their argument loses its force in the face of our holding to the effect that appellants consented to the releases, and that no breach took place.

In its cross-appeal, respondent urges error on the part of the court in refusing to grant a permanent mandatory injunction compelling appellants to deliver to it their hops during the balance of the ten-year period.

The pertinent portion of the marketing agreement entered into with each member provided:

"The Grower agrees to deliver to, and market and sell through the Association, under the conditions and on the terms herein set forth, and in conformity with the rules and regulations of the Association as from time to time promulgated, all hops produced, owned, controlled, or possessed by him, commencing with all hops produced during the year 1938 and every year thereafter to and including the crop produced in 1947. . . .

"All hops shall be marketed and sold by the Association, as the exclusive sales agent of the Grower. The Association shall keep accurate records showing the variety and grade of each bale of hops, and the sales price thereof. . . .

"The Grower understands and agrees that the purpose of the Association and of this agreement, is to increase and maintain the Association at its greatest efficiency as a cooperative marketing agency for the marketing of members' hops; that to accomplish this purpose, it is necessary that the Grower shall strictly and fully comply with and perform the stipulations of this contract, and that, by so doing, it is the purpose to bring about a stable market for his hops, to improve the quality of his hops, to obtain a fair price for his hops, to increase the consumption of American grown hops, to simplify and reduce the expense of distributing hops to the consumer, and to reduce the spread between the amount the producer receives for his hops, and the amount the consumer pays; and he therefore expressly agrees that he will not, during the term of this contract, sell, deliver, or otherwise dispose of any hops whatsoever to any person, firm or corporation except to the Association, under the terms of this contract.

". . . Therefore, the Grower hereby stipulates and agrees that he will deliver to the Association, to be marketed by it under the terms hereof, all hops grown, produced, owned, controlled or possessed by him, and will not sell, deliver, or otherwise dispose of them to any one else. . . .

"It is further agreed that, in the event of any breach or threatened breach of this contract by the Grower, the Association will be entitled to an injunction to pre-

vent further breach of this contract, and to a decree requiring the Grower to specifically perform."

Respondent corporation was organized under the co-operating act of this state, being Rem. Rev. Stat., §§ 2878 to 2909 [P. C. §§ 134-46 to 134-77], inclusive. In respect to a breach of the marketing contract, § 2892 [P. C. § 134-60] of that act provides:

"In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract, and to a decree of specific performance thereof."

Contracts of this character involving marketing agreements with co-operating associations have been construed by this court in the following cases: *Washington Cranberry Growers Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077; *Washington Co-op. Egg & Poultry Ass'n v. Taylor,* 122 Wash. 466, 210 Pac. 806; *Pierce County Dairymen's Ass'n v. Templin,* 124 Wash. 567, 215 Pac. 352; *Grays Harbor Dairymen's Ass'n v. Engen,* 130 Wash. 169, 226 Pac. 496; *Washington Wheat Growers' Ass'n v. Leifer,* 132 Wash. 602, 232 Pac. 339; *Olympia Milk Producers Ass'n v. Herman,* 176 Wash. 338, 29 P. (2d) 676.

Measuring our decision in this case by the authority of the above cases, we must hold that respondent is entitled to a mandatory injunction compelling delivery of hops grown by appellants so long as the contracts remain in force and effect. Any other holding would tend to destroy the purpose of respondent as a co-operative marketing association and would be in contravention of the purposes sought to be obtained by the legislature in passing the farm products marketing act, under which respondent was organized.

■ Appellants finally predicate error upon the allowance of attorney's fees. Attorney's fees were al-

lowed because of the following provision contained in the corporation's marketing contracts:

"In the event of any litigation arising out of this contract, the by-laws or the articles of incorporation of the Association, the venue of such litigation shall be and all proceedings shall be had, in the Superior Court of the State of Washington for Yakima County. Each of the parties hereto hereby waives the right of trial by jury, and the prevailing party shall recover, in addition to all costs, a reasonable sum as attorney's fees."

Under the provisions of the by-laws, respondent was entitled to an allowance of reasonable attorney's fees, as the prevailing party. Respondent, however, has cross-appealed on this point, urging that the fees allowed were not sufficient to pay counsel for the work expended in defending this action.

The litigation was important, involving many thousands of dollars. The case occupied the attention of the court for several days and that of counsel for an extended period of time in its preparation and trial. After considering the value of the hops in question and the services performed by counsel, we conclude that a reasonable amount of compensation for the work done is one thousand dollars.

The case is reversed and remanded with instructions to enter judgment in conformity with this opinion.

ALL CONCUR.