BERNIECE ADAIR, GERTRUDE BELVEAL, MELBA RUTH BRADLEY, JOHN CHOUDRUK, JOSEPHINE DEWEY, ERMA GWARTNEY, WILLIAM HANNA, JOYCE HEDRICK, MILDRED KIRK, SHIRLEY LANDERS, JEAN McCOY, FRED MOSS, PAMELA PEASE, HEWIG PORGER, LOIS YOUNG, AND JOHN A. ZUMSTEIN, APPELLANTS, *v.* THE CITY OF NORTH LAS VEGAS, NEVADA, A MUNICIPAL CORPORATION; WILLIAM L. TAYLOR, MAYOR, AND C. R. CLELAND, JOHN MYERS, JACK PETITTI, AND WENDELL G. WAITE, CITY COUNCILMEN, RESPONDENTS.

No. 5610

February 3, 1969                    450 P.2d 144

*Edward G. Marshall,* of Las Vegas, for Appellants.

*Jeffrey Ian Shaner,* of North Las Vegas, for Respondents.

**OPINION**

By the Court, THOMPSON, J.:

This appeal is from a final judgment of the district court denying a petition by several citizens and taxpayers of the City of North Las Vegas for a writ of mandamus to compel a city wide election upon an urban renewal project previously adopted by the city council, and to force disclosure by the city of certain records concerning that project. It is our opinion that the district court ruled correctly, and we affirm its determination.

By 1967 amendment to NRS 279.270, any tentatively approved urban renewal project must be submitted to the registered voters of the municipality at a regular or special election called for that purpose. This amendment was approved by the Governor on March 21, 1967, and became effective on July 1, 1967. Prior to amendment the law merely required approval of projects by the local governing body following public hearing after public notice thereof by newspaper publication.

On April 17, 1967, the City Council of North Las Vegas approved the Rose Garden Urban Renewal Project following a public hearing held on that date, which hearing had been publicly advertised from March 23 to April 13. Before this hearing, various citizens had requested, and been refused, permission to inspect certain documents in the possession of city officials. These documents consisted primarily, but not exclusively, of appraisal studies, neighborhood analysis maps, and correspondence with federal officers relating to urban renewal development in the City of North Las Vegas. The urban renewal plan itself was of public record and open to public inspection.

1. A city wide election upon the urban renewal project under the 1967 amendment to NRS 279.270 was not required since the amendment did not become effective until two and one-half months after project approval by the City Council under the then existing statute. A law "shall take effect and

be in force on July 1 following its passage, unless such law . . . shall specifically prescribe a different effective date." NRS 218.530. The 1967 amendment to NRS 279.270, approved March 21, 1967, did not "prescribe a different effective date," and did not become operative until July 1 of that year. The City Council's approval of the Rose Garden Urban Renewal Project, accomplished in accordance with the then existing statutory procedures, was valid. Butters v. City of Des Moines, 209 N.W. 401 (Iowa 1926).

2. NRS 239.010 provides that non-confidential public records shall, during office hours, be open to inspection by any person. A custodian of such records who refuses one the right to inspect is guilty of a misdemeanor.[1]

A request to inspect records pertaining to the urban renewal project was made before the public hearing on April 17 took place. Some of those records were made available for inspection, but others (preliminary appraisal studies, neighborhood analysis maps, correspondence with federal officers) were not. It is the city's position that the last mentioned records were not "public records" within the intendment of NRS 239.010. On the other hand, the complaining citizens contend that the non-produced records were essential to enable them to prepare for the public hearing, and should be deemed to be "public records" within the contemplation of the statute. By reason of this deprivation they now assert that the hearing was unfair, and seek to have it annulled.

In the context of this case it is not necessary to decide whether the particular records sought to be inspected fall

---

[1]The statute reads: "1. All public books and public records of state, county, city, district, governmental subdivision and quasi-municipal corporation officers and offices of this state (and all departments thereof), the contents of which are not otherwise declared by law to be confidential, shall be open at all times during office hours to inspection by any person, and the same may be fully copied or an abstract or memorandum prepared therefrom, and any copies, abstracts or memoranda taken therefrom may be utilized to supply the general public with copies, abstracts or memoranda of the records or in any other way in which the same may be used to the advantage of the owner thereof or of the general public.

"2. Any officer having the custody of any of the public books and public records described in subsection 1 who refuses any person the right to inspect such books and records as provided in subsection 1 is guilty of a misdemeanor."

within the statute, since no effort was made to mandate their production prior to the hearing. That remedy was available to force the claimed right of inspection, but was not utilized. Since the avowed purpose was to secure information to enable them to prepare for the hearing, the instant mandamus proceeding, filed many months after the hearing, cannot be utilized to invalidate that hearing and the action taken by the City Council upon conclusion thereof. A known remedy was waived by not being timely asserted. Franck v. J. J. Sugarman-Rudolph Co., 241 P.2d 1045, 1049 (Cal.App. 1952); Beaulaurier v. Washington State Hop Producers, 111 P.2d 559, 562 (Wash. 1941).[2]

If, for some reason, it is still important to the complaining citizens to inspect all records pertaining to the Rose Garden Urban Renewal Project, and if all such records are public records, legal avenues are open to them. Our holding today means only that the city's refusal to produce certain records for inspection before the public hearing held on April 17, does not invalidate the council action taken thereon.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.

---

[2]The instant matter is not unlike one in which a party, having the right to secure his opponent's deposition, fails to do so and, after defeat at trial, seeks to annul the result since he did not have the deposition information available for trial use. Judicial relief would not be available in such a case.